## S99A1654. HESTER v. THE STATE.
(528 SE2d 501)

SEARS, Justice.

The appellant, Harold Hester, appeals from his conviction for the malice murder of William Charnock.[1] On appeal, he contends,

---

[1] The crime occurred on April 4, 1994, and Hester was indicted on November 27, 1996. Following a jury trial, Hester was found guilty on October 24, 1997. Hester filed a motion for new trial on November 21, 1997. The court reporter certified the trial transcript on November 25, 1997. The trial court subsequently granted Hester several continuances, and Hester filed an amended motion for new trial on April 22, 1999. On April 28, the trial court denied

among other things, that the trial court erred in failing to sequester the victim's sisters during the trial, that the trial court erred in admitting certain testimony under the necessity exception to the hearsay rule, and that the trial court erred in permitting a state's witness to testify as an expert on "blood spatter." For the reasons that follow, we affirm.

Several friends and relatives of Charnock's testified that they last saw or spoke with him on April 4, 1994. At that time, Charnock was living with the appellant, Harold Hester. On the evening of April 4, Hester went to the home of Nathan Page, a friend that Hester had known for many years, and told him that he had killed Charnock. Although Page testified that Hester previously had talked about killing Charnock, Page stated that he did not believe Hester when he stated he had done so. Page also testified that Hester told him that he had waited for Charnock to come home that day, and had twice hit him over the head with a hammer. Page added that Hester asked him to help move Charnock's body and dump it in some woods, but that Page refused to do so. In addition, Hester's girlfriend testified that Hester asked her to tell police that she had been with Hester on the evening of April 4, but that she would not do so. She also testified that after Charnock disappeared, she was riding in Hester's car, and found Charnock's wallet, including his credit cards and license. There was evidence that Charnock had previously loaned about $8,000 to $10,000 to Hester; that a large portion of that loan remained unpaid; that Charnock was angry that Hester had not repaid him; and that at some point before his death, Charnock had discovered that Hester had forged a few of Charnock's checks. An FBI agent testified that when he searched Hester's belongings, he found that Hester had three checks of Charnock's that had been made payable to Hester.

On April 7, 1994, after Charnock's truck was found about 1½ miles from his home, a missing person report was filed with the Savannah Police Department. On May 9, 1994, a Chatham County Sheriff's cadaver dog located Charnock's body in some woods that abut Charnock's residence. The body was found wrapped in upholstery fabric, encased with brown bags, and secured with duct tape. The medical examiner testified that the cause of death was blunt force trauma to the head, and that there were two areas of fracturing of the skull that were consistent with the claw of a hammer or possibly the side of a hammer.

1. Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found

---

Hester's motion for new trial, as amended. Hester filed his notice of appeal on May 25, 1999, and the appeal was docketed in this Court on August 5, 1999. The appeal was submitted for decision on briefs on September 27, 1999.

Hester guilty of murder beyond a reasonable doubt.[2]

2. In his first enumeration of error, Hester contends that the trial court erred by excepting Charnock's sisters from the rule of sequestration. We conclude, however, that even if the trial court erred in excepting the sisters from the rule, the error was harmless given the overwhelming evidence of Hester's guilt, and given the fact that the trial court excluded the sisters during each other's testimony, thus precluding any possible influence of their overlapping testimony on each other.[3]

3. In his next enumeration of error, Hester contends that the trial court erred in permitting three witnesses to testify over his hearsay objection as to statements made to them by Charnock. The record, however, shows that, although Hester initially raised an objection to all three witnesses' testimony pursuant to a motion in limine, the trial court declined to make a ruling on the motion at the pre-trial hearing held thereon. The court, instead, advised defense counsel to object to each witnesses' testimony during trial, and stated that it would then rule on the objection. At trial, Hester did not object to the testimony of two of these witnesses, and he therefore has failed to preserve his objection to their testimony for appeal.[4] Hester did preserve his hearsay objection to the testimony of the third witness, Debra Leeds. Over Hester's objection, Leeds, who is one of Charnock's sisters, testified that she had asked Charnock to loan her some money, but that he told her that he could not because he had loaned his money to Hester. Having considered the record, we conclude that this testimony met the requirements for the necessity exception to the hearsay rule.[5]

4. In his fifth enumeration of error, Hester contends that the trial court erred in allowing the prosecutor to misstate evidence in his opening statement. More specifically, Hester contends that the prosecutor misrepresented the evidence when he stated that the jury would "hear a statement" in which Hester admitted killing the victim. Because the State did offer evidence that Hester told Page that he killed Charnock, we conclude that the prosecutor did not misrepresent the evidence in his opening statement. We therefore find this enumeration of error to be without merit.

5. We also find no merit to Hester's sixth enumeration of error, in which he contends that the prosecutor placed facts before the jury that were not in evidence when questioning a State's expert. Shortly

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Chester v. State*, 267 Ga. 9, 12 (471 SE2d 836) (1996); *Johnson v. State*, 258 Ga. 856, 857 (4) (376 SE2d 356) (1989).

[4] *Huntley v. State*, 271 Ga. 227, 230 (518 SE2d 890) (1999).

[5] See *Chapel v. State*, 270 Ga. 151, 155-156 (510 SE2d 802) (1998).

before the prosecutor's "statement" that is at issue, the expert had testified that a book box that was found in Hester's car could have been wrapped with the same duct tape that was used to wrap the victim. At a later part of the direct examination, the prosecutor stated "Well, you wouldn't know when the duct tape was placed [on the book box]. It could have been wrapped immediately before the body was wrapped —." Defense counsel objected, contending that "it's suggestive." The trial court overruled the objection, but the prosecutor did not pursue the line of inquiry. Having reviewed the record, we conclude that, even assuming Hester properly preserved the contention he now raises, the prosecutor's "statement" was not so prejudicial as to warrant the grant of a new trial.

6. Hester also contends that the trial court erred in permitting an FBI agent to testify as an expert on "blood spatter" analysis. We find no error. The agent testified that he had over 200 hours of crime scene investigations, and that he had attended one 60-hour course on blood spatter analysis and another 40-hour class on that subject sponsored by the FBI. Because expertise can be based upon training and experience,[6] we conclude the trial court did not abuse its discretion in accepting the FBI agent as an expert on blood spatter analysis.[7] Moreover, the lack of evidence that the stains the agent examined were human blood goes to the weight and not the admissibility of his testimony.[8]

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 2000.

*John P. Sugrue*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.

---

[6] *Campbell v. State*, 269 Ga. 186, 187 (496 SE2d 724) (1998); *Hall v. State*, 261 Ga. 778, 782 (415 SE2d 158) (1991).

[7] *Marshall v. State*, 266 Ga. 304, 306 (466 SE2d 567) (1996); *Hall v. State*, 261 Ga. at 782.

[8] *Chapel v. State*, 270 Ga. at 154. In addition, we note that a different State's expert testified that scrapings taken from an air return tested positive for the presence of human blood and that scrapings taken from the kitchen wall suggested the presence of human blood.