## S01A1640. SCOTT v. THE STATE.
(554 SE2d 488)

THOMPSON, Justice.

A jury convicted Allen Donterrius Scott of the malice murder of Edward Monds, aggravated assault on Frank Williams and Kenneth Davis, and possession of a firearm during the commission of the foregoing crimes.[1] On appeal, Scott challenges several evidentiary rulings and submits that the trial court erred in charging the jury on alibi. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence showed that Edward Monds was shot and killed while working at a Domino's Pizza store in Albany, Georgia. Frank Williams and Kenneth Davis, the victims of the aggravated assaults, were also employees at the store and were eyewitnesses to the events.

Both Williams and Davis testified at trial that an armed intruder entered the store, held all three employees at gunpoint, and demanded that they produce money from the safe. After the intruder fired a shot into the air, Monds obtained the key to the safe but explained that it was set on a timer and would not open for 15 minutes. Although the employees tried to appease the gunman with the contents of the cash register and their pocket money, he became enraged when they were unable to access the safe. He told Monds to come toward the front of the store and then charged at him and shot him in the head. Williams and Davis were able to remain in the back area while the gunman fled. They both identified him as a tall, slen-

---

[1] The murder and aggravated assaults took place on September 10, 1997. A multi-count indictment was returned on January 6, 1999, charging Scott with malice murder, felony murder with the underlying felony of aggravated assault, aggravated assault (two counts), and possession of a firearm during commission of the crimes. In addition, the indictment charged Scott with an armed robbery which occurred on May 23, 1996, possession of a weapon during commission of that crime; and with an armed robbery which occurred on April 15, 1995, and possession of a firearm during the commission of that crime. The trial court ordered severance of the 1995 and 1996 offenses, and they were subsequently dead-docketed. Trial commenced on May 10, 1999, and on the following day, a jury found Scott guilty of malice murder, felony murder, two counts of aggravated assault, and possession of a firearm during commission of the crimes. Scott was sentenced on May 28, 1999, to life imprisonment for murder, two consecutive terms of twenty years for the aggravated assaults, and five consecutive years for weapons possession. A motion for new trial was filed on June 21, 1999, amended on September 22, 2000, and denied on June 27, 2001. A notice of appeal was filed on July 24, 2001. The case was docketed in this Court on August 2, 2001, and was submitted for decision on briefs on September 24, 2001.

der, African-American male, who wore a bandana and cap concealing his head and face. Williams also observed a distinctive mark on the shooter's right arm, which he believed to be "a tattoo or some type of scar," and which he described to the investigating officers.

Based on a tip from a confidential informant, the police obtained and executed a search warrant at the home of Scott's friend, Fennix Green. Pursuant to that warrant, Scott was arrested and the murder weapon was recovered from under Green's house. In a custodial statement, Scott denied that he was involved in the shooting and he identified Green as the perpetrator. Further, Scott told police that he was with his mother and grandmother at his mother's house at the time in question.

Green testified at trial that he was walking with Scott on the evening of the shooting; that Scott produced a bandana, stocking cap, and gun and said he was going to hold up a pizza store which he had been "scouting out"; and he asked Green to go with him. Green declined and Scott walked in the direction of the pizza store. Scott met up with Green shortly thereafter. He was running and was short of breath and told Green, "damn, the man made me shoot him"; he then described the events in detail. Green observed Scott dispose of the bandana and cap in a trash can. Green walked to his mother's home and Scott arrived there minutes later. Scott told him he had gotten rid of the murder weapon, and Green allowed him to come inside. He was at Green's home when the police arrested him. It was also established that Scott asked his girlfriend to testify falsely that he was at her home at the time of the shooting.

1. The evidence was sufficient to enable a rational trier of fact to find Scott guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Scott contends that the trial court erred in denying his motion to suppress, or in the alternative, motion in limine, to prevent the introduction of photographs of his arm, as such photographs were obtained in violation of his constitutional right to counsel, and in violation of his right against self-incrimination under the Georgia Constitution.

On the day following the shooting, eyewitness Frank Williams met with the investigating officers and drew a picture of the scar that he had observed on the gunman's right forearm. Subsequently, Scott was arrested and charged with the crimes. While he was being held in jail awaiting trial, the police obtained a warrant to obtain evidence of "scars, marks, and tattoos on the arms" of the defendant. During execution of the warrant, an officer took several photographs of a scar on Scott's arm. He was not required to do an affirmative act, other than to stand for the photographs, and he cooperated with the officer. Scott's counsel was neither notified of the warrant nor was he

present while it was being executed. Williams was shown the photographs and he identified the distinctive scar as identical to one he had observed on the gunman and had described to the police.

(a) Scott was not deprived of his Sixth Amendment right to counsel, either when the photographs were shown to Williams or when they were taken. "[T]he Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *United States v. Ash*, 413 U. S. 300, 321 (93 SC 2568, 37 LE2d 619) (1973). Nor is there a right to counsel when an identifying photograph is taken. *Dodd v. State*, 236 Ga. 572 (224 SE2d 408) (1976). See also *State v. Thornton*, 253 Ga. 524 (2) (322 SE2d 711) (1984) (no requirement that an evidentiary hearing be conducted prior to a warrant being issued for taking of dental impressions).

(b) Under Art. I, Sec. I, Par. XVI of the Georgia Constitution, "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." This constitutional guarantee has been interpreted to protect against being compelled to furnish testimonial evidence against oneself, "or of doing an act against his will which is incriminating in its nature." (Punctuation and emphasis omitted.) *Creamer v. State*, 229 Ga. 511, 516-517 (192 SE2d 350) (1972). In *Ingram v. State*, 253 Ga. 622 (7) (323 SE2d 801) (1984), this Court found no violation of the Georgia privilege against self-incrimination in requiring a defendant to strip to his waist so that photographs may be taken showing tattoos on his body. See also *DeYoung v. State*, 268 Ga. 780 (13) (493 SE2d 157) (1997); *Rivers v. State*, 265 Ga. 694 (3) (461 SE2d 205) (1995) (no violation of the right against self-incrimination to require defendant to submit to photographs of his hand); *Batton v. State*, 260 Ga. 127, 130 (3) (391 SE2d 914) (1990) (defendant may be compelled to submit to removal of incriminating evidence "so long as his presence is all the cooperation required"). In the present case, Scott was not even required to remove his clothing. Compare *Ingram*, supra. In fact, he offered to assist the officer by holding up his sleeve while the photographs were taken. It follows that Scott's privilege against self-incrimination was not violated.

(c) We do not consider the photographic display unduly suggestive because Williams was not shown photographs of other scars. But even assuming arguendo that it was, we find no likelihood of irreparable misidentification. Williams had ample opportunity to view the distinguishing mark at the time of the crime, his attention was not diverted, and his contemporaneous description to the police matched the photograph of the arm of the accused. Under the totality of the circumstances, the identification was reliable. See *Semple v. State*, 271 Ga. 416 (2) (519 SE2d 912) (1999).

3. Scott objected to the admission of a videotape of the victim at

the crime scene, asserting that it was cumulative and prejudicial.

Although photographs of the victim had been admitted in evidence, the videotape showed the exact location and condition of the body as it was positioned at the crime scene. In *Jackson v. State*, 270 Ga. 494, 498 (8) (512 SE2d 241) (1999), we held that "a videotape, depicting a walk-through of the crime scene, was relevant and admissible, even though it duplicated still photographs." Likewise, the videotape here was relevant and admissible, even if duplicative.

4. Upon being taken into custody, Scott waived his *Miranda* rights and told the investigating officer that at the time of the shooting, he was with his mother and grandmother at their home. Scott challenges the prosecutor's comments in closing argument concerning his failure to produce his mother and grandmother as alibi witnesses.

It is proper for counsel to comment on the opposing side's failure to produce certain witnesses who have knowledge of material and relevant facts, where the argument is "derived from evidence properly before the factfinder." *Morgan v. State*, 267 Ga. 203, 206 (3) (476 SE2d 747) (1996). See also *Smith v. State*, 268 Ga. 860 (2) (494 SE2d 322) (1998); *Ponder v. State*, 268 Ga. 544 (2) (491 SE2d 363) (1997). Scott's custodial statement provided the evidentiary basis for the prosecutor's argument.

5. Scott submitted a request to charge on alibi and continued to press this request during the charge conference. He will not now be heard to complain of the very charge he requested; "[i]nduced error is impermissible." *Edwards v. State*, 235 Ga. 603, 604 (2) (221 SE2d 28) (1975).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 5, 2001.

*Willie C. Weaver*, for appellant.

*Kenneth B. Hodges III, District Attorney, Kenneth A. Dasher, Assistant District Attorney, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.