## S02A0054. SCOTT v. THE STATE.
(565 SE2d 810)

HINES, Justice.

Dennis James Scott appeals from his convictions for malice murder, aggravated assault, and possession of a firearm by a convicted felon, all in connection with the killing of Mildred Smith and the non-fatal shooting of Errol Peynado.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that at

---

[1] The crimes occurred July 19-20, 1998. In Case No. 98-CR-4549, Scott was indicted by a DeKalb County grand jury during the September term of 1998, on charges of malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, aggravated assault on Peynado, and possession of a firearm by a convicted felon. In Case No. 99-CR-3996, Scott was reindicted on the same charges during the July term of 1999. The State proceeded under the indictment in 99-CR-3996, and Scott was tried before a jury September 7-9, 1999, and found guilty on all charges. On September 13, 1999, Scott was sentenced to life in prison for malice murder, 20 years in prison for aggravated assault, and five years in prison for possession of a firearm by a convicted felon, all terms to be served consecutively; the court declared the felony murders merged with the malice murder conviction. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). On September 15, 1999, an order of nolle prosequi was entered on the indictment in Case No. 98-CR-4549. Scott filed a motion for new trial on September 23, 1999, which was denied on June 12, 2001, and he filed his notice of appeal on June 26, 2001. His case was docketed in this Court on September 26, 2001, and submitted for decision on November 19, 2001.

approximately 7:30 a.m. on July 20, 1998, Priester, a neighbor of Scott's, heard four gunshots, and told his wife to telephone the police. Priester emerged from his apartment when he realized that the man who was moaning in the breezeway was Peynado, another neighbor. Priester went to Peynado and found him bleeding from the head. Priester asked Peynado who had shot him, and Peynado said "he did," indicating Scott, who was standing nearby and holding a pistol. Scott admitted the shooting, stating that Peynado had threatened him and was "jigging at" Scott's girlfriend. Peynado denied this. Peynado testified that when he emerged from his apartment to go to work, Scott simultaneously emerged from his apartment directly across the breezeway. When Peynado turned to say good morning, Scott pointed a pistol at his head. Peynado heard a "pow," but remembers nothing else until Priester came to him. He testified that he had had virtually no contact with Scott previously, and none with Smith. Peynado was shot in the head, arm, and neck. Scott again told Priester that he had shot Peynado and that he "messed up."

When police officers arrived, Scott declared that he had shot Peynado and that there was another person's body inside his apartment. The police retrieved a fully-loaded pistol from the kitchen counter in Scott's apartment. Smith's body was on the bed in Scott's bedroom. She had been shot once with the barrel of the pistol pressed against her cheek, twice more in the head at close range, and once in the shoulder. Her death occurred the morning, afternoon, or early evening of the previous day. She had been lying on her back, with her head on the pillow, when shot. Bullets taken from Smith's body matched the pistol taken from Scott's kitchen.

Scott testified that: he had an alcohol problem; he and Smith had been drinking; he argued with Smith about her infidelity with Peynado; he began playing cards with Smith; and he remembered nothing else until he woke up on the couch in the living room, and found Smith dead on his bed. Scott was convinced that Peynado had killed Smith, went out to confront him, but he had no memory of shooting Peynado; nor did he know how he came to possess the pistol, or how it became loaded, either before Peynado was shot, or after Peynado was shot. A psychologist testified that Scott was an alcoholic who had reported a history of blackouts. Police officers testified that Scott did not appear to be under the influence of alcohol at the time of his arrest.

1. The evidence authorized the jury to find Scott guilty of all crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Scott was indicted in the September term of 1998, then re-indicted in the July term of 1999. The second indictment, on which Scott was tried, stated that Scott committed malice murder and fel-

ony murder "between the 19th day of July, 1998 and the 20th day of July, 1998." Scott contends that such a statement of the date, without a specified time, rendered the indictment defective. However, the indictment did not make the date a material allegation, and the indictment sufficiently advised him of the charges against him so as to enable him to prepare a defense. *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303) (1992); *Eberhardt v. State*, 257 Ga. 420, 421 (2) (359 SE2d 908) (1987). Nor was the second indictment rendered infirm because it was a reindictment on the same charges as the first indictment. See *Larochelle v. State*, 219 Ga. App. 792, 794 (2) (466 SE2d 672) (1996).

3. Prior to trial, Scott moved to sever possession of a firearm by a convicted felon and felony murder in the commission of the felony of possession of a firearm by a convicted felon, from the remaining charges. The trial court properly denied the motion. Bifurcation is not authorized where, as here, the possession charge is material to felony murder. *Villegas v. State*, 273 Ga. 824, 825 (2) (546 SE2d 504) (2001); *Haynes v. State*, 269 Ga. 181, 183 (3) (496 SE2d 721) (1998).

4. The court did not err in refusing to give Scott's requested jury charge on inability to form intent as a result of voluntary intoxication. See *Foster v. State*, 258 Ga. 736, 743 (10) (374 SE2d 188) (1988); *Gilreath v. State*, 247 Ga. 814, 831 (13) (279 SE2d 650) (1981). The jury was charged on intent and voluntary intoxication separately; the two are separate issues. *Raulerson v. State*, 268 Ga. 623, 632 (9) (491 SE2d 791) (1997). Further, there was no evidence of any alteration in Scott's brain functions due to alcohol that was "more than temporary," a condition which was implied in the requested charge. See *Hayes v. State*, 262 Ga. 881, 883-884 (3) (a) (426 SE2d 886) (1993).

5. The court instructed the jury that:

> [Y]ou may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional acts. And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill or injure. Whether or not you make such an inference is a matter solely within the discretion of the jury.

At the time of the September 1999 trial, this was considered a proper charge. However, this Court has since ruled the charge to be

error. *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001).[2] This case was pending on direct review at the time *Harris* was decided, and *Harris* expressly provides that it will apply to such cases. Thus, the charge here is erroneous. Id.

However, as in *Harris*, a question remains as to whether the error is harmless. Here, unlike *Harris*, the evidence of malice was overwhelming, accordingly, it was "highly probable that the error did not contribute to the judgment,'" and the error was harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

6. Finally, Scott contends that he did not receive effective assistance of trial counsel. In order to prevail on this claim, he must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This he fails to do.

Scott argues that his trial attorneys had conflicts of interest due to friendships with the sister of victim Smith, and that these friendships caused counsel to choose to pursue a defense strategy of impaired intent through alcoholism in the hopes of securing a manslaughter "compromise" verdict, which strategy was contrary to Scott's best interests. However, the only evidence presented was that his attorneys had no acquaintance with any sister of Smith's, and that, contrary to Scott's allegation, no sister of Smith's worked in the DeKalb County probation office. Thus, Scott failed to establish that any conflict of interest existed. He also contends that he was prejudiced by counsel's choice not to pursue a strategy that Scott now considers superior to that chosen by counsel, centered around police fabrication of his statements to them at the scene. But reasonable decisions concerning strategy do not constitute ineffective assistance of counsel. *Berry v. State*, 267 Ga. 476, 482 (4) (i) (480 SE2d 32) (1997). Further, no evidence was presented to show that trial testimony concerning his statements to police was fabricated, or that Scott ever informed counsel that such testimony was fabricated.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 3, 2002.

Dennis J. Scott, *pro se.*

J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert M. Coker, Gregory K. Schwarz, Assistant District Attorneys, Thurbert E.

---

[2] *Harris* does not hold that the first sentence of this charge is error. See *Wallace v. Higgs*, 262 Ga. 437 (421 SE2d 69) (1992).

*Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.