## S03A0227. QUINTANA v. THE STATE.
### (583 SE2d 869)

HINES, Justice.

Joseph Quintana appeals his conviction for malice murder in connection with the death of William Sands.[1] For the reasons that fol-

---

[1] Sands was killed on the night of April 7-8, 1996. On September 5, 1996, a Cobb County grand jury indicted Quintana for malice murder and felony murder while in the commission of aggravated assault. Quintana was tried before a jury March 23-30, 1998, and found guilty of malice murder and felony murder. On March 30, 1998, Quintana was sentenced to life in prison for malice murder; the felony murder stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Quintana moved for a new trial on April 3, 1998, and amended the motion on February 12, 1999; the motion was denied on May 3, 1999. Quintana filed a notice of appeal on May 28, 1999. His appeal was docketed in this Court on October 18, 2002, and submitted for decision on April 4, 2003.

low, we affirm.

After midnight, an officer with the Catoosa County Sheriff's Office saw Quintana exit a car in the parking lot of a closed business. When the officer approached, Quintana got in the car and fled, leading officers from several jurisdictions on a lengthy chase at speeds up to 100 mph.

Once apprehended, Quintana's blood alcohol concentration level proved to be 0.208. At the scene of the vehicle stop, Quintana was read his *Miranda* rights,[2] and then the implied consent notice in accordance with OCGA § 40-5-67.1 (b). Quintana interrupted the reading of the implied consent notice and said that he had killed his friend in Marietta with the pistol that was found in the car. Quintana was taken into custody. The revolver in the car driven by Quintana was proven to have fired the shot that killed Sands. It appeared that a cartridge had misfired before a projectile was discharged from the barrel. The car belonged to Sands.

At the county detention center, Quintana had a conversation with a detention officer. He asked the officer for a pen and paper and wrote: "439 Lawrence St William Sands Dead in living room!!" He told another detention officer that: he "f—d up this time"; he had killed someone by shooting him; he would probably get "eight or nine years for this"; and that "it was fun."[3]

While Quintana was in custody in Catoosa County, police officers went to Sands's residence in Cobb County. Sands's body was reclined on the sofa in the living room. He had suffered a single, fatal bullet wound to the head, while seated. There was no sign of a struggle.

Quintana told investigating officers from the Marietta Police Department that: Sands, who was 70 years old, treated Quintana, who was 35, like a son; Quintana and Sands argued because Quintana was smoking crack cocaine; Sands intimated that he would have Quintana imprisoned on a probation violation as "all it would take is a phone call"; Quintana retrieved his pistol, which was kept in a cabinet in the living room; Sands grabbed Quintana's hand;[4] Sands made no move toward him; Quintana was not in fear of Sands; and he did not believe that Sands was going to hurt him.

1. Quintana asserts that the evidence was insufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] On cross-examination, Quintana elicited testimony that the detention officer did not interpret this as a statement that Quintana believed shooting Sands was fun. On re-direct, the detention officer testified that the remark could have referred to shooting Sands.

[4] Expert testimony was that there was no gunpowder residue on Sands's person, which would be expected if he was in contact with Quintana's gun hand when the weapon discharged.

malice murder. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Although he contends that the evidence showed only that the shooting was an accident or manslaughter, there was ample evidence of malice. The evidence was that Quintana went to a cabinet, removed his pistol, pointed it at Sands, who was seated on the couch, and fired, possibly pulling the trigger a second time after a misfire. The shooting was from a distance of several feet, and Sands was struck in the head. There was no struggle and Sands made no motion toward Quintana. Quintana fled in Sands's car, taking the pistol with him. He told several people that he had killed Sands, stated that "it was fun," expressed remorse because of his relationship with Sands, and stated that he would "plead guilty" and "take my consequences." Quintana told police that Sands grabbed his hand when he held the pistol, but this was contradicted by the physical evidence.

The evidence authorized the jury to find, beyond a reasonable doubt, that Quintana was guilty of malice murder. *Jackson*, supra.

2. During jury voir dire, the State asked: "Do you think that alcohol and/or drugs could make you impulsive?" Quintana objected that this was "an improper line of questioning," without articulating the alleged impropriety, and the trial court overruled the objection. The State then asked: "Anybody believe that alcohol or drugs could make a person violent?" Quintana made no objection to this question, but now contends that the trial court should have excluded both questions.

The scope of jury voir dire is left to the sound discretion of the trial court. *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003). The trial court did not abuse its discretion in allowing these questions; they addressed whether the prospective jurors had "any inclination, leaning, or bias . . . respecting the subject matter of the action or the counsel or parties thereto." OCGA § 15-12-133.[5]

3. Quintana made two statements to officers from the Marietta Police Department. As to the first, which was made in Catoosa County on April 8, 1996, the trial court excluded any content contained therein after Quintana unequivocally invoked his right to remain silent. The second statement was made the next day, April 9, 1996, after Quintana had been transported to Cobb County. At this interview, Quintana executed a form waiving his *Miranda* rights.

---

[5] Although he does not enumerate it as error, Quintana asserts in his brief to this Court that the trial court should have allowed him to question the prospective jurors as to whether they believed a person who used illegal drugs would be more likely to be guilty of the crime charged. The trial court did not abuse its discretion in refusing to allow these questions as they implicated a prejudgment of the ultimate issue. See *Bishop v. State*, 268 Ga. 286, 292 (7) (486 SE2d 887) (1997). Quintana was permitted to ask whether anyone held views of illicit drugs that would prevent them from being an impartial juror.

Quintana contends that this interview should not have taken place as the invocation of his right to silence remained in effect, and therefore evidence of this statement should have been excluded. See *Hatcher v. State*, 259 Ga. 274, 277 (2) (379 SE2d 775) (1989).

Evidence at the *Jackson v. Denno*[6] hearing showed that Quintana told the officers they could interview him again after he was taken to Cobb County. Under such circumstances, admission of the April 9, 1996, statement was not error. See *Wilson v. State*, 275 Ga. 53, 58-59 (2) (562 SE2d 164) (2002).

4. Quintana objects to the admission of that portion of his statement to a detention officer in which he stated that he would probably get "eight or nine years for this." He contends that this constituted a comment on the possibility of parole. See OCGA § 17-8-76. But this is incorrect; there is no mention of parole in the statement. The jury was properly charged that it was not to concern itself with any question of punishment. And the remark was purely speculation on Quintana's part; nothing before the jury suggested what sentence Quintana actually faced.

5. The trial court instructed the jury:

> You may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional act and if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and, thereby, causes the death of a human being, you may infer the intent to kill. Now, whether or not you make any such inference is a matter solely within your discretion as a jury.

At the time of the March 1998 trial, this was considered a proper jury instruction. However, this Court has since ruled the charge as it pertains to the use of a deadly weapon to be error as a matter of law. *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001). See also *Scott v. State*, 275 Ga. 305, 308, n. 2 (565 SE2d 810) (2002). This case was pending on direct review at the time *Harris* was decided, and *Harris* expressly provides that it will apply to such cases. Thus, the charge here is error. *Harris*, supra.

However, unlike *Harris*, the evidence of malice in this case is overwhelming. Thus, it is highly probable that the error did not contribute to the judgment, and the error is harmless. See *Scott*, supra at 308 (5).

---

[6] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

6. The trial court instructed the jury that: "Facts and circumstances which merely place upon the defendant a grave suspicion of the crime charged, or which merely raise a speculation or conjecture of the defendant's guilt, are not sufficient to authorize a conviction of the defendant." See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Section 1.20.20 (3rd ed. 2003). Quintana argues that this instruction reduces the State's burden to prove all elements of the crimes charged beyond a reasonable doubt. We do not agree that the instruction has that effect, but need only note that Quintana requested this instruction, and cannot complain of the instruction on appeal. *Scott v. State*, 274 Ga. 476, 479 (5) (554 SE2d 488) (2001).

7. Quintana contends that the trial court's charge to the jury was in violation of the strictures of *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992) and *Cantrell v. State*, 266 Ga. 700 (469 SE2d 660) (1996), in that it did not require the jury to consider the offense of voluntary manslaughter before it considered the charge of malice murder. First, *Edge* is not concerned with malice murder, but with felony murder. See *Suits v. State*, 270 Ga. 362, 366 (6) (507 SE2d 751) (1998); *Pye v. State*, 269 Ga. 779, 787 (16) (505 SE2d 4) (1998). Further, the jury instructions here were not as Quintana states. The court clearly instructed the jury that before it considered malice murder, it must first consider whether the offense of voluntary manslaughter was committed. The verdict form for Count 1 of the indictment, which was the malice murder count, showed both malice murder and voluntary manslaughter. The jury found Quintana guilty of only malice murder.

8. Finally, Quintana contends that the trial court should have instructed the jury on the law of voluntary manslaughter, as a lesser included offense of felony murder. As noted in Division 7, supra, the court charged the jury on voluntary manslaughter as a lesser included offense of malice murder, and that it was to be considered before malice murder. It did not, however, instruct the jury that, before considering felony murder, if it found that the evidence as to the assault on which the felony murder was predicated was, in fact, voluntary manslaughter, it should find him guilty of voluntary manslaughter and not felony murder. It is this interplay of voluntary manslaughter and felony murder that *Edge*, supra, addresses. See Division 7, supra.

But the *Edge* principle was not violated. The jury charge as a whole, and the verdict form, demonstrate that the jury considered whether evidence of provocation and passion might justify a verdict of voluntary manslaughter, and the purpose of *Edge* was achieved. See *Tessmer v. State*, 273 Ga. 220, 224 (3) (539 SE2d 816) (2000).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 10, 2003.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, Maria B. Golick, Amelia G. Pray, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.