## A04A0191. WALKER v. THE STATE.
### (599 SE2d 293)

ADAMS, Judge.

Edward Bernard Walker appeals the trial court's denial of his motion for new trial following his conviction for voluntary manslaughter, possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon. Walker's sole argument on appeal is that the trial court erred in instructing the jury that it could infer the intent to kill from his use of a deadly weapon. Because we find no ground for reversal under the facts of this case, we affirm.

Construed in favor of the verdict, the evidence at trial showed that Wayne Brown visited Walker on the morning of November 29, 1997. Walker showed Brown where someone had kicked his back door in and told Brown that he was "tired of people doing him wrong." He twice told Brown that he was "fixing to take care of business." As Brown prepared to leave, Walker got ready to go with him, putting a gun in his pocket and saying that he was going "to take care of business."

As the two walked down the street, Walker asked the people they encountered whether they knew where Alexander Martin was. Alexander Foster testified that a short time before the shooting, he heard Walker say, "I'm going to get him" as he walked by Foster's window. When Walker and Brown later came upon Martin on the street, Walker approached him asking, "why did you do such . . . a thing?" Then Walker pulled out the gun and began shooting. The first shot landed at Martin's feet, and he turned away, saying, "Please don't shoot me." The second shot hit Martin in the ear, entering his brain through the ear canal. After the shooting, Walker turned to Brown and said, "Now he's dead." Afterward, Walker threw the gun in the sewer, and "was just walking around and stuff like ain't nothing happened." It is undisputed that Martin had no weapon and posed no threat to Walker at the time of the shooting. Martin died 57 days later.

Mike Lambert, who was walking with Martin at the time of the shooting, testified that Walker kept his hands in his coat pockets as he walked up to Martin. Martin stepped back in fear when Walker pulled the gun out of his pocket. Lambert saw the first shot fired at Martin's feet and heard the second shot as he ran away. Lambert testified that the night before, Walker had asked Martin to fix his back door, but refused to pay him for the work. Martin told Lambert that he had beat up Walker as a result.

Walker testified that the week before the shooting, his house had been burglarized. On the day of the shooting, he saw two men run from his back door, and he picked up the gun that one of the men dropped. He said that when he caught up with the men, he fired two shots at the ground to get them to stay until the police arrived. He told police that the second bullet must have ricocheted off the ground before it struck Martin. Walker admitted that at the time of the shooting, Martin was no threat to him.

Walker takes issue with the trial court's charge to the jury that they could infer intent from the use of a deadly weapon:

> Ladies and gentlemen, you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional act. And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill. Whether or not you make such an inference is a matter solely within your discretion.

Although this charge was considered proper at the time of the trial in November 1998, the Supreme Court of Georgia subsequently

ruled that the charge was error. *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001). And *Harris* expressly provided that this ruling would apply to any cases pending on direct review, which includes this case. Id.

But while the charge was error, the "question remains as to whether the error is harmless." *Scott v. State*, 275 Ga. 305, 308 (5) (565 SE2d 810) (2002). We agree with the trial court's conclusion that unlike *Harris*, the evidence of malice in this case was overwhelming. Walker told Brown that he was tired of people treating him wrong and that he was going "to take care of business." Then he picked up a gun and walked out of his house looking for Martin. Minutes before the shooting, a neighbor heard Walker say, "I'm going to get him." When Walker found Martin, he confronted him, then began firing at close range as Martin turned to get away and pled with him to stop shooting. Although Walker testified that he fired both shots at the ground, the evidence showed that the fatal bullet entered Martin's body through his ear. After the shooting, Walker tossed the gun away, saying, "Now he's dead." He then walked around as if nothing had occurred.

Accordingly, we find that it was "highly probable that the error did not contribute to the judgment, and the error is harmless." (Citation omitted.) *Quintana v. State*, 276 Ga. 731, 734 (5) (583 SE2d 869) (2003). See also *Scott*, 275 Ga. at 308 (5).

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED MAY 7, 2004.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Madonna H. Little, Assistant District Attorney*, for appellee.