## S04A0064. BELL v. THE STATE.
(597 SE2d 350)

SEARS, Presiding Justice.

The appellant, Tommy Bell, appeals from his conviction of various crimes, including murder, stemming from the death of his estranged wife, Vivian Bell.[1] On appeal, Mr. Bell raises numerous

---

[1] The crimes occurred on July 16, 1998. Mr. Bell was indicted on April 13, 1999. On May 17, 1999, a jury found Bell guilty of all nine counts of the indictment. On May 28, 1999, the trial court sentenced Mr. Bell to life in prison for his conviction of malice murder; sentenced Mr. Bell to life in prison for kidnapping with bodily injury; sentenced him to five years in prison for each of two convictions for the possession of a knife during the commission of certain crimes (murder and kidnapping with bodily injury); and ruled that the convictions for felony murder, aggravated battery, aggravated assault, and the possession of a knife during the commission of certain offenses (aggravated battery and aggravated assault) merged with other convictions. On June 25, 1999, Mr. Bell's trial counsel filed a motion for new trial. Subsequently, Mr. Bell obtained new appellate counsel, who filed an amended motion for new trial on August 8, 2003. On September 2, 2003, the trial court denied Mr. Bell's motion for new trial, as amended, and on September 8, 2003, Mr. Bell filed a notice of appeal. The appeal was docketed in this Court on September 16, 2003, and was submitted for decision on briefs on November 14, 2003.

issues. In this regard, we agree with Mr. Bell's contention that the trial court erred in admitting out-of-court statements that the victim made to police officers, but we conclude that the error was harmless. We also agree with Mr. Bell's contention that the trial court erred in sentencing him both for the possession of a knife during the commission of the offense of murder and for the possession of a knife during the commission of the offense of kidnapping with bodily injury. Finding no merit to Bell's other contentions, we affirm in part and reverse in part.

1. Mr. Bell and Ms. Bell were legally married at the time of Ms. Bell's death, but had lived apart for some time. The State presented evidence that on July 16, 1998, Ms. Bell disappeared. That evening, she was planning to celebrate her birthday with some friends, including her new boyfriend and another friend, Chiquita Ivory. Ms. Ivory testified that she and Ms. Bell left the hairdresser about 5:00 p.m. on the afternoon of July 16, and then went to Ms. Bell's apartment. Ms. Ivory added that Mr. Bell was at the apartment when they arrived; that she (Ms. Ivory) left Ms. Bell's apartment about 6:00 p.m.; that she talked to Ms. Bell about 7:00 p.m.; and that Ms. Bell told her that she was going to get something for her son to eat, and then come pick up Ms. Ivory to go out to celebrate Ms. Bell's birthday. Ms. Ivory testified that she never spoke with Ms. Bell again, and that she (Ms. Ivory) called Ms. Bell's apartment several times that evening, but was unable to contact her. Ms. Bell's son testified that he lived with his mother; that on the afternoon of July 16, he knew his mother was going out for the evening; that his father was at Ms. Bell's apartment; that his mother told him she would buy him some food and leave it at the apartment; that he (Ms. Bell's son) left the apartment late in the afternoon and did not return home until about 2:00 a.m.; and that when he returned home, his mother was not at the apartment but his father was.

About 2:30 p.m. on July 18, Ms. Bell's body was found in a field in an isolated area in Houston County, and her car was found nearby. Ms. Bell had bled to death from knife wounds to her neck. A police officer testified that one of Ms. Bell's shoes was located near the car and that her other shoe was 35 feet down a dirt road. The officer added that near the latter shoe, the vegetation on the ground was "torn up," and that there was blood spatter all around the area. There were also footprints going to a nearby pond.

Two women testified that at about 8:15 p.m. on the evening of July 16, they were driving a few hundred yards from where Ms. Bell's body was discovered and saw Mr. Bell, whom they knew, walking along the side of the road. They stopped and gave Mr. Bell a ride. They testified that Mr. Bell was "wild looking," was barefoot, was sweating and breathing heavily, and was carrying some wet clothes in a clear

plastic bag. They added that he asked to be dropped off at the apartment where Ms. Bell lived.

About 11:30 a.m. on July 18, Mr. Bell filed a terroristic threat complaint against one of Ms. Bell's relatives, and a police officer went to Ms. Bell's apartment to investigate. Among other things, Mr. Bell told the officer that he was visiting from Atlanta, and that his wife was out of town on business. Mr. Bell stayed at Ms. Bell's apartment until he voluntarily went to the police station late in the afternoon on July 18, and the police took photographs of some small puncture wounds and scratches that they saw on Mr. Bell. The State introduced evidence of numerous prior difficulties between Mr. and Ms. Bell. In this regard, Valerie Jackson, who was Ms. Bell's best friend for over ten years and who was also a friend of Mr. Bell, testified that Ms. Bell told her that on one occasion, Mr. Bell put a knife to Ms. Bell's throat and threatened to kill her. Ms. Jackson also testified that in December 1997, Mr. Bell told her that if he ever caught Ms. Bell with another man, he would kill her.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that it is sufficient to support Mr. Bell's convictions.[2]

2. Mr. Bell contends that the trial court erred in denying his motion to suppress statements, photographs, and fingerprints that police officers obtained when Mr. Bell went to the police station on July 18. However, Mr. Bell's contention that the taking of the statements, photographs, and fingerprints violated his right against self-incrimination has no merit, as the record shows that Mr. Bell voluntarily spoke with the police on July 18 and was not in custody and that he voluntarily permitted the taking of the photographs and fingerprints.[3] Moreover, requiring a defendant to permit photographs to be taken of him or to submit to fingerprinting does not violate a defendant's right against self-incrimination.[4]

3. Contrary to Mr. Bell's contention, the trial court did not err by ruling that evidence of prior difficulties between Mr. and Ms. Bell was admissible under the standards set forth in *Wall v. State*.[5] However, some of this evidence of prior difficulties consisted of the hearsay statements of Ms. Bell, and Mr. Bell contends that the trial court

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Cook v. State*, 274 Ga. 891, 894 (561 SE2d 407) (2002); *Garner v. State*, 267 Ga. 884, 885 (485 SE2d 729) (1997); *Hambrick v. State*, 204 Ga. App. 668, 670 (420 SE2d 308) (1992); Milich, Georgia Rules of Evidence, § 27.2, p. 554 (2nd ed. 2002).

[4] See, e.g., *Scott v. State*, 274 Ga. 476, 478 (554 SE2d 488) (2001); *Batton v. State*, 260 Ga. 127, 130 (391 SE2d 914) (1990); *Lemons v. State*, 167 Ga. App. 863, 864 (307 SE2d 747) (1983); Milich, supra at 554.

[5] *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998). Accord *Myers v. State*, 275 Ga. 709, 711 (572 SE2d 606) (2002); *Dixon v. State*, 275 Ga. 232, 233 (564 SE2d 198) (2002).

improperly admitted the statements under the necessity exception to the hearsay rule. As for the out-of-court statements that the victim made to two relatives and to a witness who was her best friend for a decade, we conclude that the trial court did not err in concluding that the statements were admissible under the standards set forth in *Chapel v. State*.[6] However, under the recent case of *Crawford v. Washington*,[7] the trial court erred in admitting out-of-court statements that the victim had made to police officers during the course of the officers' investigations of complaints made by the victim against Mr. Bell. These out-of-court statements are considered to be testimonial in nature, and were inadmissible since Ms. Bell was unavailable to testify at trial and Mr. Bell did not have a prior opportunity to cross-examine the victim about the statements.[8] We also conclude, however, that given the strength of the evidence against Mr. Bell and the fact that the trial court properly admitted other evidence of prior difficulties, including evidence of prior threats by Mr. Bell to kill Ms. Bell, any error in admitting the hearsay statements made by the victim to the police officers was harmless.[9]

4. Mr. Bell contends that the trial court erred in permitting a law enforcement officer to testify as an expert in the field of blood spatter. However, because the officer testified that he had had extensive training in the field of blood spatter, we cannot conclude that the trial court abused its discretion in permitting the officer to testify as an expert.[10] Mr. Bell also contends that the trial court erred by not permitting a forensic toxicologist to testify as an expert concerning the development of ethyl alcohol in a decomposing body. However, because the toxicologist testified that he did not have any training or particular knowledge regarding the subject on which Mr. Bell sought to question him, the trial court did not abuse its discretion in ruling that he could not testify as an expert.[11]

5. Contrary to Mr. Bell's contention, the trial court did not err in admitting a pre-autopsy photograph into evidence, as the body had not been altered by authorities and as the photograph was admissible to demonstrate the nature and location of the victim's wounds.[12]

6. Mr. Bell contends that the trial court erred in ruling against his claim that he received ineffective assistance of trial counsel. In

---

[6] *Chapel v. State*, 270 Ga. 151, 154-156 (510 SE2d 802) (1998).

[7] *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

[8] *Moody v. State*, 277 Ga. 676, 679-680 (594 SE2d 350) (2004); *Crawford*, 124 SC at 1363-1373.

[9] *Moody*, 277 Ga. at 680.

[10] *Hester v. State*, 272 Ga. 197, 200 (528 SE2d 501) (2000).

[11] Id.

[12] *Morgan v. State*, 276 Ga. 72, 76 (575 SE2d 468) (2003).

particular, Mr. Bell contends that his trial counsel was ineffective because he had only two months to prepare for trial and failed to adequately investigate the facts, interview witnesses, and meet with Mr. Bell. The record, however, shows that Mr. Bell's trial counsel did meet with Mr. Bell numerous times before trial; that he interviewed witnesses for the prosecution and the defense; that he took over the case from the local public defender's office when it had a conflict develop in its representation of Mr. Bell; and that he reviewed the public defender's file and spoke with the public defender who had been handling the case. Thus, the record does not support Mr. Bell's assertion that his trial counsel did not adequately prepare for his trial. Moreover, at the hearing on the motion for new trial, Mr. Bell did not offer any evidence of witnesses that trial counsel had failed to subpoena or any evidence of prejudice that he may have suffered as a result of trial counsel's alleged ineffectiveness. For these reasons, Mr. Bell has failed to prove either that his trial counsel performed deficiently or that trial counsel's alleged deficient performance prejudiced the defense.[13]

7. There is no merit to Mr. Bell's contention that his conviction for kidnapping with bodily injury merged as a matter of fact with his conviction for malice murder.[14] However, under our recent decision of *State v. Marlowe*,[15] the trial court erred by sentencing Mr. Bell on both the possession of a knife during the commission of murder and on the possession of a knife during the commission of kidnapping with bodily injury.[16]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 24, 2004 —
RECONSIDERATION DENIED JUNE 28, 2004.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

---

[13] See *Morgan v. State*, 275 Ga. 222, 227-228 (564 SE2d 192) (2002); *Smith v. State*, 273 Ga. 356, 358 (541 SE2d 362) (2001).

[14] *Washington v. State*, 276 Ga. 655, 657-658 (581 SE2d 518) (2003). See also *Braley v. State*, 276 Ga. 47, 53 (572 SE2d 583) (2002).

[15] 277 Ga. 383, 385-387 (589 SE2d 69) (2003).

[16] Id.