S09A2068. OWENS v. THE STATE.

(693 SE2d 490)

HUNSTEIN, Chief Justice.

Appellant Charles Edward Owens appeals his conviction of malice murder in connection with the 1981 shooting death of

Rebecca Heath.[1] Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence established as follows. The victim was discovered in the Heaths' car on Smokey Road in Troup County, Georgia at approximately 11:00 a.m. on August 31, 1981 by an employee of the Troup County Electric Membership Corporation, who noticed a green Oldsmobile on the side of the road with its front fender against a tree, approached the car to help, observed the victim, who was not moving, and called the Sheriff's Department. In addition to the Oldsmobile's tire tracks, the witness also observed another set of tire tracks in close proximity, as if the second car had been parked in front of the Oldsmobile. The responding police officer determined that the victim was dead and had been so for no more than two to three hours. A bullet, later determined to be from a .32 caliber gun, had shattered her eyeball and lodged in her brain. At the time of her death, the victim was pregnant with a nearly full term healthy baby boy.

At the time of the crime, the victim and husband Larry Heath were living on a dead-end street in Phenix City, Alabama. A neighbor of the Heaths testified that at approximately 7:15 a.m. on August 31, he noticed a van and the Heaths' green Oldsmobile pulling onto their street from an adjacent state road.

A witness who lived on Smokey Road, where the victim's body was discovered, testified that, at approximately 9:00 a.m. on August 31, as he was driving down Smokey Road, he observed a whitish-blue Mustang pull out of a pulpwood road, which he deemed unusual; as soon as the driver saw the witness, the car sped away. The witness

---

[1] Appellant, along with the victim's husband, Larry Heath, and other co-indictees Jerry Heath, Denise Lambert, Gregory Lumpkin, and Sammy Williams, was indicted by a Troup County grand jury on November 3, 1981 for malice murder. In 1982, appellant and co-defendant Lumpkin were tried jointly, convicted, and sentenced to life imprisonment; on appeal, their convictions were reversed. *Owens v. State*, 251 Ga. 313 (1), (9) (305 SE2d 102) (1983) (reversing convictions based on trial court's limiting cross-examination of State's witnesses regarding pending criminal charges against them and improper jury communication). The two were jointly retried in April 1984; both were again found guilty of malice murder, and appellant was sentenced to life imprisonment.

Through trial counsel, appellant filed a timely motion for new trial, which, for reasons unclear from the record, was never ruled on. Shortly after his conviction in Troup County, appellant was removed to Alabama for prosecution in connection with the Heath murder; in April 1985, he was convicted and sentenced to death, but that conviction was subsequently reversed. *Owens v. State*, 531 S2d 22 (Ala. Crim. App. 1988). Appellant ultimately pled guilty to various charges in Alabama and received a life sentence consecutive to his Georgia sentence.

In June 2004, appellant filed a pro se motion for out-of-time appeal and a request for an evidentiary hearing on claims for ineffective assistance of trial counsel. The trial court denied the request for an evidentiary hearing but apparently never ruled on the motion for out-of-time appeal. In February 2009, through new counsel, appellant filed an amended motion for new trial. Following a hearing on May 22, 2009, the motion was denied on June 26, 2009. Appellant filed his notice of appeal on July 15, 2009. The appeal was docketed in this Court on August 26, 2009 and orally argued on November 9, 2009.

then passed a green car about 35 feet from the side of the road with its headlights on and engine idling.

Another witness testified that, on August 24, 1981, he observed Larry Heath transact unknown business with three men who arrived at Heath's workplace in a white Mustang. The witness later identified two of the men as appellant and Lumpkin. During the transaction, the witness observed Heath retrieve a revolver, load it, and return it to a desk drawer.

Jerry Heath, Larry Heath's brother, testified as part of a plea deal with authorities in Alabama.[2] He testified that, around the beginning of August 1981, his brother asked him whether he knew of anyone who would agree to kill someone for him. Jerry suggested contacting appellant, also known as "Slim," whom Jerry had known for approximately ten years. Jerry also testified that on various occasions he had been to appellant's apartment, where he had seen Lumpkin, who drove a white Mustang and owned a .32 caliber revolver. Approximately two weeks after giving Larry appellant's name, Jerry saw Larry and Lumpkin at appellant's apartment. Larry stated during the visit that if he could not find someone to help him, he was going to "kill her himself."

Williams also testified for the State as part of a deal with Alabama authorities.[3] He testified that, in August 1981, he met at appellant's apartment with appellant and Lumpkin about killing Larry's girlfriend. Appellant gave Williams a gun, which Williams identified at trial, and Williams told appellant he would think about it. Williams, Lumpkin, and appellant subsequently drove in a white Mustang belonging to Lumpkin to meet with Larry at his workplace, where Larry reiterated his request for help in killing his girlfriend, gave Williams $100, and gave appellant a gun. Williams further testified that appellant, Lumpkin, and Larry had instructed him to kill the occupant of a certain green car in the parking lot of a LaGrange shopping mall and make it appear to have been a robbery. However, Williams testified, he did not want to commit the murder, had been interested only in the money and the gun, did not carry out the plan, and sold the gun at a grocery store with someone named Shorty. At some later time, appellant and Lumpkin told him in regard to the murder that it was "too late."

A grocery store owner doing business in Phenix City testified

---

[2] Jerry Heath was tried separately in connection with Rebecca Heath's murder in Troup County and was acquitted. Also indicted in Alabama, he pled guilty to conspiracy in exchange for his testimony in other pending proceedings involving Rebecca Heath's murder.

[3] Williams pled guilty in Troup County of conspiracy to commit murder and was sentenced to ten years in prison. In exchange for his testimony in connection with other prosecutions involving the Heath murder, he was not prosecuted in Alabama.

that, in August 1981, he purchased a .357 Magnum from a black man named Shorty, who purported to be selling it for his companion, whom the witness later identified as Williams.

Upon questioning by investigators after his arrest, appellant, who went by the nickname "Slim," admitted that he had taken money from Larry Heath but claimed the money was intended for someone else whom he would not identify. Appellant also admitted giving Williams a gun at his apartment approximately two weeks before the murder and corroborated various details regarding the meeting at Larry's workplace, including the exchange of money between Larry and Williams. Appellant also claimed that on the morning of the murder, he, driving the white Mustang, and another black male, driving the Heaths' car, followed Larry, who was driving a truck, to Phenix City, but that he had never gone to the Heath house and instead waited nearby until he saw the Heath car pull out onto the highway, which he followed until losing it in traffic. He further claimed he had no knowledge of what happened at the Heath home that morning or that the purpose of the excursion was to murder Rebecca Heath.

Lumpkin also gave a series of statements after his arrest, in which he admitted that he, Williams, and another black male had gone to see a man named Larry at his workplace and that the other black male had informed him that Larry wanted his wife killed. Lumpkin also stated that the other black male had asked him to find someone to do the job, and that Lumpkin had asked Williams. Lumpkin further stated that the job was to be done for $3,000.

Denise Lambert, who pled guilty to conspiracy to commit murder in both Georgia and Alabama and agreed to cooperate with authorities, testified that she had been dating Larry Heath for some time prior to the murder. She testified that Larry had told her he was unhappy in his marriage and planned to seek a divorce. A few days prior to the murder, Larry told Lambert he was upset because his wife had withdrawn a large sum of money from their bank account and that he planned to have her killed. On the eve of the murder, Larry brought his and the victim's two-year-old son to Lambert and asked that she watch him for the night. At 6:00 a.m. the next morning, he stopped by her home briefly, left, and then summoned her to meet him at a service station, where Larry got into her truck and began driving to the Heaths' home, followed by the Heaths' car and a white Mustang occupied by a black man, identified by Lambert as appellant. The Mustang and the Heath car remained at the Heath home; Larry, Lambert, and the child returned to the service station in the truck, and Lambert dropped Larry off at work. Later that day, a man identifying himself as "Slim" called Lambert demanding payment from her or Larry now that Larry had "gotten his wish";

Lambert told Larry, who instructed Lambert to pay Slim with money Larry had given her. Lambert subsequently met with appellant and gave him the money.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Whether the evidence excludes other reasonable hypotheses is ordinarily a question for the jury, whose finding shall not be disturbed unless the verdict of guilt is unsupportable as a matter of law. *Murray v. State*, 271 Ga. 504 (1) (521 SE2d 564) (1999). Here, the jury was authorized to find that appellant met with Larry Heath and other co-indictees on at least two occasions to discuss the murder of Rebecca Heath; that appellant accepted money from Larry Heath prior to the murder; that appellant instructed Williams on how to kill the victim; that appellant drove to the Heath home with Larry Heath and Lumpkin on the morning of the murder; and that appellant demanded and accepted money from Lambert as compensation for the murder. Accordingly, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant asserts that the significant delay in resolving his motion for new trial violated his right to due process. "This Court has recognized that substantial delays experienced during the criminal appellate process implicate due process rights. [Cits.]" *Chatman v. Mancill*, 280 Ga. 253, 256 (2) (a) (626 SE2d 102) (2006). We assess claims involving appellate delay under the four factor analysis utilized for speedy trial claims set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which examines, in determining whether a defendant's due process rights have been violated, the length of delay; the reason for delay; the defendant's assertion of his right; and the prejudice to the defendant. *Chatman*, supra, 280 Ga. at 256-257 (2) (a).

(a) We agree with appellant that 25 years is an inordinate amount of time to await disposition of a motion for new trial. See *Loadholt v. State*, 286 Ga. 402 (4) (687 SE2d 824) (2010) (nine-year delay between conviction and appeal deemed excessive); *Chatman*, supra, 280 Ga. at 257-258 (2) (b) (eight-year delay between conviction and affirmance deemed excessive). This factor clearly weighs in appellant's favor.

(b) The reason for the delay is unclear from the record. Appellant's initial motion for new trial was filed by trial counsel in May 1984. Aside from a 1985 order transferring various trial exhibits to Alabama for use in appellant's trial there, no further proceedings or

filings occurred in the case until June 2004, when appellant filed his pro se motion for out-of-time appeal. Though the trial court denied appellant's related pro se motion for evidentiary hearing in August 2005, the court failed to rule on the motion for out-of-time appeal. Not until current counsel filed appellant's amended motion for new trial in February 2009 highlighting the continued pendency of the 1984 motion for new trial did the trial court afford the case its attention. Where the record reveals no reason for delay, such delay will be held attributable to the negligence of the State. *Boseman v. State*, 263 Ga. 730 (1) (b) (438 SE2d 626) (1994).[4] Therefore, this factor also weighs in appellant's favor.

(c) Notwithstanding the State's inattention to the case, appellant too bears responsibility for his substantial delay in asserting his rights. Though appellant states in a sworn affidavit submitted with his amended motion for new trial that he made numerous attempts to contact trial counsel for information about the status of his motion for new trial, he does not specify when those efforts were made, nor does he attempt to explain why, after receiving no response from counsel, he waited 20 years to contact the trial court seeking resolution of his claims. This factor, therefore, weighs against appellant.

(d) As to the final factor, prejudice to the defense, we have held that

> the prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.

(Footnote omitted.) *Chatman*, supra, 280 Ga. at 260 (2) (e). Appellate delay is deemed prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. Id. at 260-261 (2) (e).

Here, appellant has failed to make a showing of any prejudice to his appeal attributable to the delay in proceedings. As the remainder of this opinion reflects, we have found no merit to the other enumerations appellant has raised herein. " '[T]here can . . . be no

---

[4] Though typically advanced in the context of delays in prosecuting a case, this default presumption of negligence on the part of the State holds true in the post-trial/appellate context as well, as the State bears the ultimate responsibility for the efficient management of court dockets. See *Ruffin v. State*, 284 Ga. 52, 61 (2) (b) (ii) (663 SE2d 189) (2008) (for speedy trial purposes, the State "includes all state actors, even trial and appellate court judges").

prejudice in delaying a meritless appeal.' [Cit.]" *Loadholt*, supra, 286 Ga. at 406 (4). Further, though appellant notes that the trial exhibits are not in the record, he fails to explain how the absence of the trial exhibits impaired his ability to assert claims on appeal. Likewise, while appellant asserts that he might have raised a challenge on appeal to the trial court's denial of his pre-trial motion for change of venue, he fails to specify how the delay in proceedings harmed his ability to make such a claim, particularly given that voir dire is transcribed fully in the record. Appellant also makes the bare assertion that it is impossible at this late date to investigate potential claims for ineffective assistance of trial counsel, without identifying any reasonably viable ineffectiveness claims that may have been raised[5] and, notably, without indicating whether any efforts have been made to contact trial counsel in this regard. Accordingly, appellant "has failed to offer the specific evidence required to show that the delay has prejudiced his appeal or that the result of the appeal would have been different but for the delay." Id. at 406 (4).

Weighing all four *Barker* factors together, we conclude that the delay in resolving appellant's motion for new trial did not violate his right to due process. "While we do not approve of the delay occasioned here, we [nonetheless find that] the trial court did not abuse its discretion in ruling that [appellant's] due process claim must fail." *Loadholt*, supra, 286 Ga. at 406 (4).

3. Appellant contends that the trial court's jury charge on venue was impermissibly burden-shifting. The trial court instructed the jury on venue as follows:

> Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred. If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

This language was drawn verbatim from the Georgia venue statute. OCGA § 17-2-2 (c). Subsequent to appellant's trial, we instructed trial courts to refrain from quoting this statutory language verbatim

---

[5] Though appellant asserts that the delay has hampered his ability to investigate whether counsel was deficient in failing to raise a challenge to the State's use of peremptory strikes under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), we note that *Batson* was not decided until after appellant's trial.

to avoid the potential for juries to construe the charge as shifting the burden of persuasion to the defendant on the issue of venue. *Napier v. State*, 276 Ga. 769 (2) (583 SE2d 825) (2003). However, we have also made clear that the use of such language will not constitute error where the charge taken as a whole plainly informs the jury that venue is a material allegation as to each crime charged and that, as such, the State bears the burden to prove venue as to each crime beyond a reasonable doubt. *Edmond v. State*, 283 Ga. 507 (4) (661 SE2d 520) (2008); *Napier*, supra at 772-773 (2).

Here, in addition to the above charge, the trial court specifically instructed the jury that appellant was charged with the murder of Rebecca Heath on the date of August 31, 1981 in Troup County, Georgia. After describing the crime charged, the court further instructed that "I've read to you the material allegations of the State's indictment against the [appellant]" and subsequently charged that "it is the duty of the State to prove each and every one of the material allegations of the indictment and the guilt of the [appellant] sufficiently to convince your mind beyond a reasonable doubt of the guilt of the accused." The court also clearly instructed on the accused's presumption of innocence and informed the jury that its instruction should be construed in its entirety. Under these circumstances, "we reject appellant['s] claim that the trial court's jury charge was burden-shifting with regard to venue." *Napier*, supra, 276 Ga. at 773 (2).

4. In his final enumeration, appellant contends that the trial court also improperly charged the jury that

> [i]f a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer malice and the intent to kill.

Subsequent to appellant's trial, this instruction was held erroneous. *Harris v. State*, 273 Ga. 608 (2) (543 SE2d 716) (2001). As *Harris* expressly provides that it shall apply to cases pending on direct review, id., the charge given here was error. However, the giving of such an instruction is deemed harmless where the evidence of malice is overwhelming. *Flanders v. State*, 279 Ga. 35 (8) (609 SE2d 346) (2005); *Scott v. State*, 275 Ga. 305 (5) (565 SE2d 810) (2002). Here, there was evidence that appellant participated in two meetings to plan the murder, instructed Williams on how to perform the murder, was present at the victim's home on the morning she was killed, and accepted payment for the murder. Accordingly, "it is highly probable that the [erroneous instruction] did not contribute to the verdict."

*Flanders*, supra at 40 (8).

*Judgment affirmed. All the Justices concur, except Carley, P. J., Melton and Nahmias, JJ., who concur specially.*

MELTON, Justice, concurring specially.

I join all of the majority opinion except for Division 3, in which I concur only in the result. I write separately to emphasize that, although a venue instruction based on the verbatim language of OCGA § 17-2-2 (c) and (h) may not be ideal, it is not improperly burden-shifting as a matter of law and will not support any claim to the contrary.

We made this clear in *Napier v. State*, 276 Ga. 769, 772 (2) (583 SE2d 825) (2003), where we held:

> In criminal prosecutions, due process of law prohibits jury charges that could be interpreted by reasonable jurors as creating either: (1) a conclusive presumption regarding an essential element or a material allegation of the State's case, or (2) a presumption that shifts the burden of persuasion on an essential element or material allegation to the defendant. Appellants argue the trial court's jury charges regarding venue suffer from the latter infirmity.
>
> We disagree with appellants' contention, although we concede the trial court's charges on venue were taken from poorly drafted legislation. Rather than creating burden-shifting presumptions regarding venue, Code section 17-2-2 was intended by the legislature to provide means by which a jury can ensure that the constitutional mandate of establishing venue beyond a reasonable doubt has been satisfied in cases such as this one, where the State has brought forth evidence to establish venue and the defendant has introduced evidence intended to counter that showing. We note that OCGA § 17-2-2 (c) and (h) instruct juries to "consider" — rather than "presume" — whether, in certain factual scenarios, venue has been properly laid. In normal usage, "consider" means to contemplate, think about, or reflect upon, and thus we do not believe the statute requires any compulsory or permissive presumptions to be drawn regarding whether venue in a particular forum is proper.

(Footnotes omitted.) Therefore, a venue instruction based on the verbatim language of OCGA § 17-2-2 (c) and (h) is neither erroneous nor burden-shifting, although it may not be the clearest in its directives.

Despite this fact, after suggesting an alternative instruction on

venue in *Napier*, we observed:

> As for this particular case, we are satisfied that the trial court's charge did not raise any improper burden-shifting presumptions regarding venue. Whenever this Court considers a claim of an erroneous jury instruction, we evaluate the jury charge as a whole. In this case, in addition to the charge quoted above, the trial court instructed that venue is a jurisdictional fact that must be proved beyond a reasonable doubt as to each crime charged, and even went so far as to instruct the jury to determine whether venue was properly laid before considering the criminal charges set forth in the indictment. The trial court also charged that the presumption of innocence remained with appellants throughout trial; that the burden of proof rested upon the State to prove every material allegation and essential element of its case beyond a reasonable doubt; that no burden of proof is ever placed upon or shifted to the appellants; and that all jury instructions should be considered collectively as a "package." Accordingly, we reject appellants' claim that the trial court's jury charge was burden-shifting with regard to venue.

(Footnote omitted.) Id. at 773. This analysis, however, is both superfluous and ill-suited in this context because a venue instruction based on the verbatim language of OCGA § 17-2-2 (c) and (h) is not erroneous. It is a legally acceptable, though not ideal, instruction on venue. As a result, appellants in cases such as this can succeed on their burden-shifting contentions only if they can show that other parts of the jury charge as a whole contained burden-shifting language. In other words, the appellate burden is on the defendant to show that other aspects of the jury charge were improper, not on this Court to evaluate the jury charge as a whole in light of a proper instruction.

For these reasons, I believe that the majority erroneously concludes that a venue instruction based on the verbatim language of OCGA § 17-2-2 (c) and (h) "will not constitute error where the charge taken as a whole plainly informs the jury that venue is a material allegation to each crime charged and that, as such, the State bears the burden to prove venue as to each crime beyond a reasonable doubt." This statement requires the trial court to do more than simply read the indictment and inform the jury that the State has the burden of proving all material elements of the indictment. Instead, it requires the trial court to call venue to the jury's attention, thereby specifically informing them that venue is a

material element (as opposed to the date of the crime and other non-material elements). The majority's statement also makes it appear that, although the instruction at issue is not burden-shifting, it may still be erroneous if this additional venue-specific charge is not given. That is simply not the case. If we wished to consider the charge as a whole in cases like this, it would be more accurate to state that the venue charge is not erroneous or burden-shifting, but even if it were, the charge as a whole was appropriate. I think, perhaps, that may have ultimately been the intended effect of *Napier*, supra.

I am authorized to state that Presiding Justice Carley and Justice Nahmias join in this special concurrence.

DECIDED MARCH 26, 2010.

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr.*, for appellant.

*Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.