[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12590

_____

D.C. Docket No. 3:11-cv-00157-TCB


CHARLES EDWARD OWENS,

Petitioner - Appellant,

versus

GREGORY MCLAUGHLIN,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 24, 2013)

Before WILSON and MARTIN, Circuit Judges, and HUCK,* District Judge.

WILSON, Circuit Judge:

---

* Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Charles Edward Owens, a Georgia state prisoner sentenced to life in prison for malice murder, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition.  On appeal, Owens argues that (1) the state trial court's instructions to the jury on venue, an essential element of the crime charged, improperly shifted the burden of proof from the state to him in violation of the Due Process Clause of the Fourteenth Amendment and *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450 (1979); and (2) the state trial court's 25-year delay in resolving his motion for a new trial violated his due process rights under the Fourteenth Amendment.  After review of the parties' briefs, the appellate record, and with the benefit of oral argument, we affirm.

## I.  FACTUAL BACKGROUND

On August 31, 1981, at approximately 11:00 a.m., Rebecca Heath was found shot dead in the back seat of her green Oldsmobile on Smokey Road in Troup County, Georgia.  At the time of her death, Ms. Heath was nine months pregnant with a baby boy.  She lived with her husband Larry Heath in Phenix City, Alabama.[1]  Phenix City sits on the banks of the Chattahoochee River.  The Alabama-Georgia line runs right through the river.  Troup County, Georgia is roughly 47 miles from the Heaths' home.

---

[1] In February 1982, Larry Heath pleaded guilty in Georgia state court to the murder of Ms. Heath.  He was sentenced to life in prison.  In January 1983, a jury in Alabama convicted him of murder during a kidnapping and he received the death penalty.  He has since been executed.

In Georgia, venue is an essential element of the offense, so at Owens's trial, the state was required to prove beyond a reasonable doubt that Ms. Heath was killed in a Georgia county.  Although Ms. Heath's body was found in Troup County, Georgia, Owens argued that there was some evidence to support a determination that the death may have previously occurred in Alabama.  Therefore, venue became a hotly contested issue at trial, especially with regard to the instructions on venue given to the jury.

It was the state's theory that venue was proper in Georgia because that is, the state argued, where Ms. Heath was killed.  At trial, the evidence demonstrated that Larry Heath hired Owens and Gregory Lumpkin to kill Ms. Heath.[2]  A witness testified that on August 24, 1981, he observed Heath transact some type of business with three men who showed up at Heath's work.  The men were driving a white Mustang.  The witness later identified two of the men as Owens and Lumpkin.

Also at trial, a neighbor of the Heaths testified that on August 31, 1981, he observed a truck and the Heaths' green Oldsmobile parked on a road near the Heath home in Alabama.  The two vehicles were side by side and the occupants appeared to be having a conversation.  The time was approximately 7:15 a.m.

---

[2] Lumpkin and Owens were jointly tried and both were found guilty of malice murder.

Another witness testified that around 9:00 a.m. on the same day, he was driving down Smokey Road in Troup County, Georgia, and observed a whitish-blue Mustang pull out from a wooded area. The witness thought this unusual. As soon as the driver of the Mustang saw the witness, he drove away at a high rate of speed. The witness then drove past a green car that was parked roughly 35 feet from the side of the road. The car's headlights were on and the engine was still running.

At 11:00 a.m. another motorist driving down Smokey Road noticed the green Oldsmobile off to the side of the road. He approached the car to help, observed that the person inside—later identified as Ms. Heath—was not moving, and called the Sheriff's Department. The motorist saw two sets of tire tracks. One clearly belonged to the Oldsmobile. The other set of tire tracks showed that a second car had been parked in front of the Oldsmobile. The Sheriff's Department responded almost immediately. The responding officer noted that the body was still warm, and based on his experience in the Sheriff's Department, determined that Ms. Heath had been dead for no more than two to three hours.

In April 1984, Owens was convicted in Georgia of malice murder and sentenced to life in prison. The next month, Owens moved for a new trial, arguing that the verdict was contrary to the law and strongly against the weight of the evidence. For reasons unknown, this motion was never ruled upon. In February

4

1985, the state trial court issued an order directing that certain evidence be transferred to Alabama, where Owens had been indicted for the capital murder of Ms. Heath.  The Alabama indictment alleged that Ms. Heath was murdered during a kidnapping in the first degree, in violation of Alabama Code § 13A-5-40(a)(1). A jury found Owens guilty, and recommended that he be sentenced to  life in prison without the possibility of parole.  The trial judge determined, however, that the aggravating circumstances outweighed the mitigating circumstances and sentenced Owens to death by electrocution.  The conviction was later overturned on appeal, and on remand he pleaded guilty and was sentenced to life in prison.

Back to Georgia—Owens filed an amended motion for a new trial in February 2009.  It was denied the following June, and on direct appeal, Owens contended that the jury instructions improperly shifted to him the burden of proving venue.  Venue was a highly contested issue at his trial, as the parties presented conflicting evidence as to whether Ms. Heath was killed in Georgia or in her home in Alabama.  Additionally, Owens claimed that the 25-year delay between 1984 and February 2009 in resolving his motion for a new trial violated his due process rights.  Following oral argument, the Georgia Supreme Court affirmed Owens's conviction and sentence.  Despite noting the problematic phrasing of the jury instruction at issue, the court found that the "charge taken as a whole plainly informs the jury that venue is a material allegation as to each crime

5

charged and that, as such, the [s]tate bears the burden to prove venue as to each crime beyond a reasonable doubt." *Owens v. State*, 693 S.E.2d 490, 495 (Ga. 2010).  As to the motion for a new trial, the court concluded that the 25-year delay did not violate Owens's due process rights.  *Id.* at 494.

Owens then filed the instant § 2254 petition in federal court.  A magistrate judge recommended denying his petition.  The district court agreed, and adopted the magistrate's recommendation in full.  Owens appealed.

## II.  STANDARD OF REVIEW

The district court's denial or grant of a § 2254 habeas petition is reviewed de novo.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).  Where the defendant challenges the jury instructions as read, we review the legal correctness of the instruction de novo.  *See United States v. Mintmire*, 507 F.3d 1273, 1292–93 (11th Cir. 2007).

Owens's § 2254 petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which precludes federal courts from granting habeas relief on a state court claim adjudicated on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law when it arrives at an opposite result from the Supreme Court on a question of law,

6

or when it arrives at a different result from the Supreme Court on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). The decision of a state court is an "unreasonable application" of federal law when it:

> [I]dentifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply.

*Kimbrough v. Sec'y, DOC*, 565 F.3d 796, 799 (11th Cir. 2009) (per curiam) (alterations and internal quotation marks omitted).

## III. DISCUSSION

Owens raises two arguments on appeal. We address each in turn.

### A. *Sandstrom* Error

We first decide whether the state trial court's instructions to the jury improperly shifted the burden of proof to Owens on venue, in violation of the Due Process Clause of the Fourteenth Amendment and *Sandstrom*.

In *Sandstrom*, the trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 512, 99 S. Ct. at 2453. At his trial, David Sandstrom admitted that he killed the victim, but argued that he did not do so "purposely or knowingly." *Id.* (internal quotation marks omitted). Consequently, he was not guilty of deliberate homicide but of a

7

lesser offense. *Id.* The jury disagreed and Sandstrom was convicted of deliberate homicide and sentenced to 100 years in prison. *Id.* at 513, 99 S. Ct. at 2453.

Sandstrom appealed, arguing that the instruction shifted onto him the burden of disproving intent, an element of the crime charged, in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881 (1975), *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970), and *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319 (1977). *Sandstrom*, 442 U.S. at 513, 99 S. Ct. at 2454. In *Sandstrom*, the Montana Supreme Court agreed "that these cases did prohibit shifting the burden of proof to the defendant by means of a presumption," but nonetheless "held that the cases do not prohibit allocation of *some* burden of proof to a defendant under certain circumstances." *Id.* (emphasis in original) (internal quotation marks omitted).

Reversing the Montana Supreme Court, the Supreme Court of the United States found that Sandstrom's jurors "were not told that they had a choice . . . ; they were told only that the law presumed" Sandstrom "purposely or knowingly" committed deliberate homicide. *Id.* at 515, 99 S. Ct. at 2454. The Court subsequently held the jury instruction unconstitutional because it relieved the state of its Fourteenth Amendment burden of proving every element of a criminal offense beyond a reasonable doubt: "'Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof

8

beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged.'" *Id.* at 520, 99 S. Ct. at 2457 (emphasis in original) (quoting *In re Winship*, 397 U.S. at 364, 90 S. Ct. at 1073).

Owens argues that the jury instruction on venue at his trial violated this principle enumerated by *Sandstrom*. The trial judge, reading verbatim the Georgia statutory provision regarding venue, instructed the jury as follows:

> Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred. If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

Ga. Code Ann. § 17-2-2(c). Owens takes issue with the final sentence of the jury instruction and contends that by including the phrase "it shall be considered," the trial court told the jury to find that Ms. Heath was murdered in Troup County, Georgia. Said another way, if the jury had difficulty determining where the cause of death was inflicted, the instruction mandated that "it shall be considered" that the cause of death was inflicted in Troup County because her body was found there. The state counters that the jury instruction did not impermissibly shift the burden, and that Owens has failed to show that the Georgia Supreme Court's decision should not survive AEDPA deference. To determine whether the jury

9

instructions at issue violated Owens's constitutional rights, we take the following steps:

> [W]e must consider first, whether the instructions concerned an essential element of the offense with which the petitioner was charged; second, whether the instructions operated to shift the burden of proof; and third, whether any error which might have arisen from the shifting of the burden was harmless in the context of this case.

*Davis v. Kemp*, 752 F.2d 1515, 1517 (11th Cir. 1985) (en banc) (per curiam).

The first question is easily answered: in the state of Georgia, venue is an essential element of the offense. "Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged." *Jones v. State*, 537 S.E.2d 80, 83 (Ga. 2000); *see* Ga. Const. art. VI, §2, para. 5 (requiring venue to be laid "in the county where the crime was committed"). "It is a constitutional requirement, not just a procedural nicety." *State v. Dixon*, 691 S.E.2d 207, 209 (Ga. 2010) (internal quotation marks omitted). It is up to the prosecution to prove venue beyond a reasonable doubt. *Jones*, 537 S.E.2d at 83. Thus, if the prosecution fails to prove venue, it fails to prove its case. *See Lynn v. State*, 565 S.E.2d 800, 801 (Ga. 2002) (stating that "for at least the last one hundred years, this Court has reversed criminal convictions when the [s]tate failed to prove venue").

The state disputes that venue is an essential element as defined in *Sandstrom*. It acknowledges its burden to prove venue beyond a reasonable doubt

10

and that it is a mandatory part of its case; however, because venue is not a traditional element of guilt, the state says, the jury instruction at issue here cannot amount to a *Sandstrom* error. *See* Ga. Code Ann. § 16-5-1 (defining elements of malice murder). The state is correct that *Sandstrom* and its progeny deal with intent, a traditional element of guilt. Even so, in Georgia, to obtain a conviction for malice murder, the state must prove certain elements beyond a reasonable doubt. One of those elements is venue. Another is intent. There is a difference, but we are in no position to weigh the relative importance of each. That is up to the Georgia legislature. We *are* in a position, however, to recognize the federal constitutional duty that a state prove every element—including venue—beyond a reasonable doubt.

Having determined that venue is an essential element of the offense, we next determine whether the instruction impermissibly shifted onto Owens the burden of proving it. *See Francis v. Franklin*, 471 U.S. 307, 315, 105 S. Ct. 1965, 1971 (1985). The Georgia Supreme Court has repeatedly held that the instruction given here does not impermissibly shift the burden of proof. *See, e.g.*, *Edmond v. State*, 661 S.E.2d 520, 523 (Ga. 2008) (considering jury instructions as a whole, "it shall be considered" did not impermissibly shift the burden); *Napier v. State*, 583 S.E.2d 825, 829 (Ga. 2003) (holding that Georgia Code section 17–2–2 does not impermissibly shift the burden of proof to the defendant, in part because it instructs

11

"juries to 'consider'—rather than 'presume'—whether . . . venue has been properly laid. In normal usage, 'consider' means to contemplate, think about, or reflect upon . . ."). Owens's Georgia Supreme Court case was no different. *See Owens*, 693 S.E.2d at 495 (finding no error "where the charge taken as a whole plainly informs the jury that venue is a material allegation as to each crime charged and that, as such, the [s]tate bears the burden to prove venue as to each crime beyond a reasonable doubt").

It is important to note that while AEDPA does require us to defer to the Georgia Supreme Court's interpretation of federal law, *see* 28 U.S.C. § 2254(d)(1) (permitting relief only where the state court's interpretation of federal law is unreasonable), it nonetheless remains true that when analyzing an alleged *Sandstrom* error the question "is not what the [s]tate [s]upreme [c]ourt declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning." *Francis*, 471 U.S. at 315–16, 105 S. Ct. at 1972 (citing *Sandstrom*, 442 U.S. at 516–17, 99 S. Ct. at 2455).

We have held proper a jury instruction that uses permissive language such as "may infer" and "may consider." *See, e.g.*, *United States v. Cotton*, 770 F.2d 940, 946 (11th Cir. 1985) (finding no *Sandstrom* error in instruction that jurors "may infer the defendant's intent from the surrounding circumstances" and "may consider it reasonable to draw the inference and find that a person intends the

12

natural and probable consequences of acts knowingly done or knowingly omitted"). But that is not the language we have here. The problem lies with the word "shall." "Shall" is a word of command; it means "ha[ving] a duty to; more broadly, is required to." *Black's Law Dictionary* 1407 (8th ed. 2004). Instead of instructing jurors that if they could not determine where the cause of death occurred, they "*may* consider" it to have occurred where the body was found, Owens's jurors were told that they "*shall* consider" the cause of death to have occurred where the body was found. Read in isolation, "shall consider" suggests a mandatory presumption: the jury was required to deem the cause of death to have been inflicted in Troup County solely because the body was found there. *See Carella v. California*, 491 U.S. 264, 265–66, 109 S. Ct. 2419, 2420–21 (1989) (per curiam) (finding error where instruction provides the defendant "shall be presumed to have embezzled" because it "directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses" and also "relieved the [s]tate of its burden of proof articulated in *Winship*, namely, proving by evidence every essential element of [the defendant's] crime beyond a reasonable doubt"). We find that a mandatory presumption of this nature is contrary to *Sandstrom* and therefore violates Owens's constitutional rights.

There is additional support for this determination in the Georgia Supreme Court's numerous attempts to cure the defective language. For example, in *Napier*,

13

the court advised future trial courts to refrain from quoting the instructions on venue—Georgia Code section 17-2-2(c)—verbatim.  583 S.E.2d at 829.  The court suggested that to avoid confusion, courts should use "may consider" rather than the statutory language "shall consider."  *Id.* at 829–30.  Likewise in *Edmond*, the Georgia Supreme Court once again noted the problem with the language in Georgia Code section 17-2-2(c) and reiterated the fact that it had "previously set forth the better practice of charging the jury that it 'may consider' whether the crime was committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."  661 S.E.2d at 523.  Even in Owens's Georgia Supreme Court case, the same was true.  Citing to *Napier*, the court stated that "[s]ubsequent to [Owens's] trial, we instructed trial courts to refrain from quoting this statutory language verbatim to avoid the potential for juries to construe the charge as shifting the burden of persuasion to the defendant on the issue of venue."  *Owens*, 693 S.E.2d at 495.  The fact that the Georgia Supreme Court recognized that the instruction at issue had the "potential" to confuse juries on who had the burden of proof as to venue is problematic.  *See Sandstrom*, 442 U.S. at 519, 99 S. Ct. at 2456–57 (holding unconstitutional jury instructions that might reasonably have been understood as creating a conclusive presumption).

14

The state's contention that the jury instructions as a whole cured the *Sandstrom* error is not persuasive either. The state claims that instructions to the jury about the presumption of innocence and that the state was required to prove every element of the offense—venue included—beyond a reasonable doubt amounts to sufficient clarification for the jury.[3] But instructions like these are exactly the type of general instructions *Francis* found inadequate: "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." 471 U.S. at 322, 105 S. Ct. at 1975. A reasonable juror could have incorrectly thought that although the state had the burden of proving venue beyond a reasonable doubt, the fact that the body was found in Troup County was enough to meet that burden. *See id.*; *Sandstrom*, 442 U.S. at 518 n.7, 99 S. Ct. at 2456 n.7.

The last step in our analysis requires us to determine whether the *Sandstrom* error was harmless. *See Rose v. Clark*, 478 U.S. 570, 580–82, 106 S. Ct. 3101, 3107–08 (1986). On collateral review, we apply the harmless-error standard as articulated in *Brecht v. Abrahamson*, which dictates that a federal court may grant

---

[3] The trial court instructed the jury that:

[T]hese defendants enter upon the trial of this case with the presumption of innocence in their favor and this presumption remains with them until and unless the [s]tate shall overcome and remove it by the introduction of competent evidence in your presence and hearing sufficient to convince your mind beyond a reasonable doubt of the guilt of the accused. In this connection I charge you that it is the duty of the [s]tate to prove each and every one of the material allegations of the indictment and the guilt of the defendants sufficiently to convince your mind beyond a reasonable doubt of the guilt of the accused.

habeas relief on account of a constitutional error only if it determines that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993) (internal quotation marks omitted); *see Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1110–12 (11th Cir. 2012) (outlining *Brecht* analysis on federal habeas review), *cert. denied, Trepal v. Crews*, 133 S. Ct. 1598 (2013).  Under the *Brecht* standard, the petitioner should prevail when the record is "so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error."  *O'Neal v. McAninch*, 513 U.S. 432, 437, 115 S. Ct. 992, 995 (1995); *see Caldwell v. Bell*, 288 F.3d 838, 842 (6th Cir. 2002) ("When faced with a *Sandstrom* error a court should not assume it is harmless but must review the entire case under the harmless-error standard the Supreme Court most recently expounded in *Brecht* . . . .").  "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence."  *Trepal*, 684 F.3d at 1114 (internal quotation marks omitted).

But that is not the case here, for we do not have a record that is so "evenly balanced."  *O'Neal*, 513 U.S. at 437, 115 S. Ct. at 995.  At trial, the prosecution presented substantial evidence to support its theory that Ms. Heath was killed in Troup County, Georgia.  The evidence showed that on the morning of August 31, 1981, Owens and Lumpkin drove to the Heaths' Alabama home, forced Ms. Heath

16

into her green Oldsmobile at gunpoint, drove her to Smokey Road in Troup County, Georgia, where they fatally shot her sometime around 9:00 a.m., and then fled the scene in a Mustang. There were no signs of a struggle, drag marks, or suspicious bloodstains at the Heaths' home in Alabama. There was also no evidence to suggest that Ms. Heath struggled or that she had been dragged from one location to another. Instead, the evidence overwhelmingly demonstrated that Ms. Heath was killed in the car which was found in Georgia: the police found blood splattered inside the green Oldsmobile, including small amounts of blood on the victim's hands, arms, and face, on the front passenger seat, rear seat, and rear floor board, and all over her purse. Blood was also found splattered on the front radio.

Because the record is not "so evenly balanced" as to leave us "in grave doubt as to the harmlessness" of the *Sandstrom* error, we affirm the denial of relief on this claim. *See id.*

B. Owens's Motion for a New Trial

Owens's second argument—that his due process rights were violated because the state court waited 25 years before ruling on his motion for a new trial—also fails. The Supreme Court has never held that there is a constitutional right to a speedy direct appeal in a state criminal case. Nor are we able to find any precedent suggesting that a constitutional violation arises from an untimely ruling

on a motion for a new trial.  Consequently, we must afford deference to the Georgia Supreme Court's determination because it cannot be said that its decision denying Owens's motion for a new trial was contrary to, or an unreasonable application of, clearly established federal law.  *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003).

## IV.  Conclusion

Because we find that any *Sandstrom* error was harmless, the Georgia Supreme Court's decision cannot be said to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  *See* §2254(d)(1).  Likewise, the delayed ruling on Owens's motion for a new trial did not violate his constitutional rights.

**AFFIRMED.**