In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0106.  SHELTON v. LEE.

Benham, Justice.

Appellant William Lee Shelton was tried by a jury in the Pike County Superior Court and convicted of malice murder and robbery by force.  He was sentenced to life in prison.  On direct appeal in 2005, this Court affirmed Shelton's convictions and rejected, among other things, an evidentiary challenge to venue in Pike County, because, even though conflicting evidence was presented regarding where the injury causing death was inflicted, the body was discovered there.  Thus, we concluded, the evidence was sufficient to establish venue in Pike County beyond a reasonable doubt.  *Shelton v. State*, 279 Ga. 161, 162-163 (4) (611 SE2d 161) (2005).

On July 11, 2013, Shelton filed a petition for habeas corpus relief, in which he asserted that his due process rights were violated by the instruction to the jury which closely tracked language found in OCGA § 17-2-2 (c), that

"where it cannot be readily determined in which county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered."[1]  Shelton argued that this language instructed the jury to consider the cause of death to have occurred where the body was found and unconstitutionally shifted the burden of proving venue to the defendant.  The habeas court found this issue was barred by res judicata because the issue of whether venue was established in Pike County was raised and ruled upon in the direct appeal.

1.  We agree with Shelton that a due process challenge to the jury instruction on venue was neither raised nor ruled upon in his direct appeal.  In Shelton's direct appeal, this Court addressed only the sufficiency of the evidence with respect to venue.  *Shelton v. State*, supra.  The warden concedes that the habeas court's finding that this ground for habeas relief was barred by

[1]  Shelton's petition for habeas relief was filed well after the four-year period of limitation for seeking habeas relief from the date his conviction became final as a result of this Court's 2005 opinion affirming his conviction.  See OCGA § 9-14-42 (c) (1).  The respondent raised the statute of limitation in response to the petition.  Shelton, however, submitted evidence to support his assertion that his appellate counsel abandoned his case before the appeal was final and that, despite his due diligence and repeated efforts to obtain information about the status of his direct appeal to this Court, his counsel failed to respond until after the four year limitation period expired.  The habeas court found the petition was timely filed pursuant to the terms of OCGA § 9-14-42 (c) (4), which provides that a petition must be filed within the applicable time period from "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence."  The respondent did not challenge this finding on appeal, and since this issue does not present a jurisdictional bar to this Court's consideration of Shelton's application for certificate of probable cause to appeal, we do not address it.

2

res judicata was erroneous. In a habeas corpus proceeding, res judicata bars only those issues actually litigated and decided on direct appeal. See *Schofield v. Palmer*, 279 Ga. 848, 851 (2) (621 SE2d 726) (2005) (a claim that was not raised in earlier proceedings is not procedurally barred for habeas corpus review). Although we conclude the habeas court erred in finding Shelton's due process challenge was barred by res judicata, we nevertheless decide, for the reasons that follow, that the habeas court reached the right result in denying habeas relief. As a result, the habeas court's denial of relief on this ground is hereby affirmed under the right for any reason rule. See *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014) (finding the habeas court reached the correct result in denying habeas relief even though based upon an improper factual assumption). In fact, Shelton's due process challenge to the jury instructions at his trial is procedurally defaulted because he has failed to show cause for his noncompliance with the requirement that he assert this challenge on direct appeal, as well as actual prejudice as a result of such noncompliance. See § 9-14-48 (d); *Chatman v. Mancill*, 278 Ga. 488, 489 (604 SE2d 154) (2004).

2. (a) Shelton asserted in his amended petition for habeas relief that the Eleventh Circuit's opinion in *Owens v. McLaughlin*[2] established a change in the law in his favor that would allow him to overcome his procedural default. See *Rollf v. Carter,* 298 Ga. 557 (784 SE2d 341) (2016); *Bruce v. Smith*, 274 Ga. 432 (2) (553 SE2d 808) (2001). Because we conclude the Eleventh Circuit's opinion misunderstands Georgia's substantive law of venue, we disapprove that court's conclusion that a jury instruction based upon the language used in OCGA § 17-2-2 (c), like the one given in this case, unconstitutionally shifts the burden of proof with respect to venue. Properly understood, the jury instructions given in this case did not unconstitutionally shift the burden of proof with respect to venue to the defendant. They accurately instructed the jury on the substantive Georgia law of venue in a case such as this one where it is not readily apparent where the crime was committed. Accordingly, Shelton fails to show he is entitled to habeas relief on this ground.

(b) The Eleventh Circuit in its *Owens* opinion noted that this Court "has repeatedly held that the instruction given here does not impermissibly shift the

---

[2] 733 F3d 320, 327 (III) (A) (11th Cir. 2013).

burden of proof." 733 F3d at 326 (III) (citing this Court's opinion in Owens's direct appeal, *Owens v. State*, 286 Ga. 821, 827 (3) (693 SE2d 490) (2010); *Edmond v. State*, 283 Ga. 507 (661 SE2d 520) (2008); and *Napier v. State*, 276 Ga. 769 (2) (583 SE2d 825) (2003)). The instruction given in the *Owens* case was substantially identical to the one given to Shelton's jury: where it cannot readily be determined in what county the cause of death was inflicted "it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered." *Owens v. McLaughlin*, supra, 733 F3d at 325. Because the Eleventh Circuit found that the "shall be considered" language suggests a mandatory presumption that effectively relieved the state of the burden of proof on the issue of venue, it found the instruction had violated Owens's constitutional rights. In arriving at this conclusion, the Eleventh Circuit found that the instruction given to Owens's jury on venue violated the rule in *Sandstrom*[3] that a jury instruction violates the due process protections of the Fourteenth Amendment if it creates a presumption that shifts to the defendant the burden of proof of an element of the crime charged. As we have in other cases involving substantially similar instructions, but for somewhat

[3] *Sandstrom v. Montana*, 442 U.S. 510 (99 SCt 2450, 61 LE2d 39) (1979).

5

different reasons, we conclude again that the instruction given to Shelton's jury did not unconstitutionally shift the burden of proof on the element of venue. Instead, it is our view that the Eleventh Circuit in *Owens v. McLaughlin* did not properly construe Georgia's constitutional and statutory law on venue, and therefore it mistakenly concluded that jury instructions based directly on Georgia's venue law improperly shift to the defendant the burden of proof with respect to venue.

Venue, as a matter of constitutional law in Georgia, is "where the crime was committed" and that is where the defendant "shall be tried." See Const. 1983 Art. VI, Sec. 2, Para. VI. ("[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county.") But the Constitution does not define where specific crimes are committed. When a crime is clearly complete upon the happening of a single occurrence—usually a single discrete act done with a particular intent or degree of criminal negligence—determining the county in which the crime was committed may be a fairly straightforward task. But in the case of homicide and certain other crimes, that factual determination is not always readily apparent. Homicide crimes, for instance, require both a causal act done with

6

the requisite degree of intent *and* a resulting death. Those occurrences may happen in different counties, and in such cases the Constitution sets forth no particularized standard for ascertaining in which county the crime was committed. Likewise, the Constitution does not specifically address cases in which a crime occurs upon, or crosses, a state boundary or a county line. Nor does the Constitution address cases in which it is proved that a crime was committed in Georgia, but the county or counties in which the crime was committed are unknown and perhaps unknowable.

The Constitution's venue provision leaves room for the General Assembly to create statutory rules concerning the manner in which a jury should determine where certain crimes were committed. The legislature has done just that in its enactment of OCGA § 17-2-2, subsection (c) of which concerns venue in homicide cases. This Court has held that OCGA § 17-2-2 does not violate the constitutional mandate. "It merely provides a mechanism by which that mandate can be carried out when the place in which the crime is committed cannot be determined with certainty." *Bundren v. State*, 247 Ga. 180 (274 SE2d 455) (1981). See also *Hinton v. State*, 280 Ga. 811 (2) (631 SE2d 365 (2006) (applying *Bundren* in a homicide case); *State v. Mayze*, 280 Ga. 5, 10 (622 SE2d 836) (2005) (referring to the statute establishing venue in

7

a criminal homicide case as an example of the broad legislative authority of the General Assembly to define where venue lies for certain crimes); *Adsitt v. State*, 248 Ga. 237 (4) (282 SE2d 305) (1981) (upholding the constitutionality of OCGA § 17-2-2 (b), which establishes where venue lies upon a jury's finding that a crime is committed on or immediately adjacent to the boundary between two counties). Courts in other states have also recognized the authority of the legislature to elaborate upon the state's constitutional provisions relating to venue in special cases like homicides. See, e.g., *State v. Krejci*, 458 NW2d 407, 410-411 (Minn. 1990).

The United States Supreme Court has held that, generally speaking, statutory construction of a state's own law is a matter left to the courts of that state,[4] and we reiterate that subsection (c) of OCGA § 17-2-2 establishes, as a matter of law, that venue in homicide cases exists where certain events occurred. It does not dictate the county in which a jury must find these events occurred, and thereby the county in which venue lies. Where a specific crime was committed remains an issue of fact to be determined by a jury pursuant to the constitutional and statutory rule of venue. Properly understood, OCGA §

---

[4] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (II) (95 SCt 1881, 44LEd 2d 508) (1975).

8

17-2-2 simply establishes what facts or events are relevant to determining venue. The jury, however, still makes these factual findings.

OCGA § 17-2-2 (c) sets forth a three-step process by which a jury in a criminal homicide case may reach a factual finding about where the crime was committed.[5] First, according to the statutory rule, the jury is to determine from the facts presented at trial the county in which the cause of death was inflicted. Once that factual issue is determined, the homicide "shall be considered" as a matter of law, "as having been committed" in that county. If that is the county in which the accused is being tried, then proper venue has been established. If, however, the jury cannot determine where the cause of death was inflicted, the statute gives further instructions: it directs the jury to determine as a matter of fact the county in which the death occurred. Once that factual issue is determined, the homicide "shall be considered," as a matter of law, as having

---

[5] OCGA § 17-2-2 (a) states: "Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law."

OCGA § 17-2-2 (c) states:

> Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred. If a dead body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

9

been committed in that county. If the jury can determine neither the county in which the cause of death was inflicted nor the county in which the death occurred, then the jury is required to determine the county in which the dead body was discovered. Applying the venue statue, the homicide "shall be considered," as a matter of law, as having been committed in the county in which the body was discovered. Once the jury has determined from the facts presented, and pursuant to these substantive statutory rules, the location where the crime was committed, it can then determine whether proper venue has been established by the state.

Neither the Constitution nor the venue statute is sensibly interpreted as meaning that a defendant in a homicide case cannot be convicted if the county in which the cause of death was inflicted cannot be determined beyond a reasonable doubt, even though it is clear that a homicide occurred, that the defendant caused the victim's death, and that the county in which the victim died or was found dead can be determined. Further, if a defendant believes the venue statute violates the Constitution's venue provision, it should be challenged on that ground, which would raise a question of state constitutional law. See *Hinton v. State*, supra, 280 Ga. 811 at (2); *Bundren v. State*, supra,

10

247 Ga. 180 at (1). Shelton did not challenge the constitutionality of the statute.

In *Napier*, this Court correctly rejected the assertion that a jury instruction based upon the language of OCGA § 17-2-2 (c) was improperly burden-shifting on the essential element of venue.

> Rather than creating burden-shifting presumptions regarding venue, Code section 17-2-2 was intended by the legislature to provide means by which a jury can ensure that the constitutional mandate of establishing venue beyond a reasonable doubt has been satisfied in cases such as this one, where the State has brought forth evidence to establish venue and the defendant has introduced evidence intended to counter that showing.

276 Ga. at 771 (2). But this Court went astray in *Napier* when we engaged in a discussion of whether the language of the jury instructions, based upon the statute, could be interpreted as requiring the jury to make compulsory findings regarding venue. Instead, as set forth above, a jury instruction based on this statute requires the jury only to make factual findings about the county in which certain events happened. Once those findings are made, venue is determined as a matter of law.

As did the specially concurring Justices in *Napier*, we conclude it is entirely proper to instruct the jury that, once certain factual findings are

11

made—i.e., the county in which the cause of death was inflicted—the proper jurisdiction for venue purposes "shall be considered" to be established as a matter of law. To instruct a jury that it "may consider" that location to be the county in which venue is proper confers authority upon the jury that does not exist under Georgia law. See *Napier*, 276 Ga. at 776 (Carley, J., concurring specially). Instead, since venue is a jurisdictional fact that the state must prove beyond a reasonable doubt,[6] the jury must be instructed where venue properly lies as a matter of law in order for the jury to determine as a matter of fact whether the state has proved venue to support a conviction. The factfinder has no discretion with regard to the law of venue. Id. at 777. For that reason, it is proper for the jury to be instructed where venue "shall be considered," as a matter of law, once it has determined certain facts.

The Eleventh Circuit focused on this Court's advice, in *Napier*, to trial courts in future cases that the better practice would be to instruct the jury that it "may consider whether" the cause of death was inflicted in the county in which the death occurred or in which the body was discovered. See *Napier*, supra, 276 Ga. at 772 (2). But as set forth above, we now disapprove of that

---

6  See *Bulloch v. State*, 293 Ga. 179, 187 (4) (744 SE2d 763) (2013).

distinction and that advice to trial courts.[7]  We hold, instead, that a jury instruction that follows the "shall be considered" language of OCGA § 17-2-2 (c) is a proper instruction.  Contrary to the Eleventh Circuit's conclusion, we are not persuaded that instructions such as those given in this case, viewed properly as a matter of Georgia venue law, violate the rule in *Sandstrom* by unconstitutionally shifting to the defendant the burden of proof of an element of the crime charged.  The instruction given to Shelton's jury, which was substantially identical to that given in the *Owens* case, did not shift the burden of proof with respect to venue.  It properly instructed the jury on the rules of state venue law for the jury to follow with respect to reaching a factual determination of the county in which the homicide was committed.  It further properly instructed the jury that once that determination was made, Georgia law dictates that this is where venue lies for trying the defendant.  Instead of relieving the state of its burden of proof with respect to venue, this instruction properly set forth the facts and circumstances the state was required to prove in order for the jury to find venue was established in Pike County and did not improperly shift that burden to Shelton.  Unlike the jury in *Sandstrom*,

---

[7]   We also disapprove our decision in *Owens v. State* to the extent it repeated that advice.

13

Shelton's jury was not told to presume any element of the crime without factual proof beyond a reasonable doubt.[8]

3. Thus, to the extent Shelton claims the law regarding venue instructions in a homicide case has changed in his favor, it has not. For the reasons just explained, the law is still against him. Consequently, Shelton could not overcome his procedural default based on a change in the law in his favor.

Likewise, Shelton's claim that his procedural default may be overcome by the ineffective assistance of his counsel cannot be sustained. See *Humphrey v. Walker*, 294 Ga. 855, 858 (II) (A) (757 SE2d 68) (2014) ("A common method of satisfying the cause and prejudice test is to show that trial and direct appeal counsel rendered ineffective assistance . . . ." (Citation and punctuation omitted)). The standard for demonstrating ineffective assistance of counsel for purposes of meeting the cause and prejudice requirement of OCGA § 9-14-48 (d) is similar to that required for demonstrating constitutionally ineffective

---

[8] Likewise, the facts in this case are materially distinguishable from *Mullaney v. Wilbur*, supra, 421 U.S. 684, relied upon by the Supreme Court in *Sandstrom*, which invalidated a Maine law requiring a criminal defendant to prove the critical fact in dispute in a manslaughter case, i.e., that the crime was committed in the heat of passion, in order to reduce a murder charge to manslaughter; and are distinguishable from *Morissette v. United States*, 342 U.S. 246 (72 SCt 240, 96 LE2d 288) (1952), holding unconstitutional a jury instruction that the commission of an act raises a presumption of criminal intent.

assistance pursuant to *Strickland v. Washington*[9]--that is, a showing of professionally deficient performance of counsel along with a showing that but for the deficiencies a reasonable probability exists that the outcome of the proceeding would have been different. See *Perkins v. Hall*, 288 Ga. 810, 822 (III) (C) (708 SE2d 335) (2011); see also *Humphrey v. Walker*, supra, 294 Ga. at 859. Because we have determined that a challenge to the venue instruction given in this case as being unconstitutionally burden-shifting would be meritless, the failure of Shelton's trial and appellate counsel to raise the challenge was neither deficient nor did it cause Shelton prejudice. See *Moss v. State*, 298 Ga. 613, 617 (5) (a) (783 SE2d 652) (2016). Shelton's claim for habeas relief fails.[10]

Judgment affirmed. All the Justices concur.

---

[9] 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[10] We recognize that Georgia trial and habeas courts will be bound by our decision in this case, see Ga. Const. of 1983, Art. VI, Sec. VI. Par. VI, whereas federal habeas courts in Georgia districts remain bound by the Eleventh Circuit opinion in *Owens v. McLaughlin*. We hope the Eleventh Circuit will reconsider *Owens* in light of this decision; if not, the Supreme Court of the United States will need to resolve the conflict.